BERNICE TYLER TURGEON *vs.* WILFRED EUGENE TURGEON.

Hampden.   May 7, 1953. — July 7, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Equity Pleading and Practice,* Appeal.

No appeal lay in a suit in equity from a judge's findings, rulings, and order for further hearing. [405]

Failure by the plaintiff in a suit in equity as appellant to give a written order for the preparation of papers as required by G. L. (Ter. Ed.) c. 231, § 135, rendered his appeal nugatory and precluded consideration thereof by this court even though on an appeal by the defendant

the record, not a consolidated record, contained sufficient to enable
this court to determine the merits of the plaintiff's appeal. [408]

A party not appealing from a decree in a suit in equity cannot have the
decree made more favorable to him on the opposing party's appeal.
[409]

BILL IN EQUITY, filed in the Superior Court on September 27, 1945.

Following the decision by this court reported in 326 Mass.
384, the suit was heard by *Goldberg,* J., and then was referred to a master. An interlocutory decree confirming the
master's report and a final decree were entered by order of
*Leary,* J.

*Frank J. McKay,* for the defendant.

*Morris Michelson,* (*M. Arthur Gordon* with him,) for the
plaintiff.

COUNIHAN, J. This is a bill of complaint in which the
plaintiff, who is the wife of the defendant, seeks to establish
her interest in certain real estate, certain money, and the
assets of a business which the defendant personally conducted under the name and style of Holyoke Beef Company.
The case was here before. *Turgeon* v. *Turgeon,* 326 Mass.
384. The allegations of the bill are set forth there. We
reversed the final decree and the interlocutory decree confirming the master's report and remanded the suit to the
Superior Court for further proceedings.

The suit was then heard by a judge who made "Findings
of Fact, Rulings and Order." The evidence before this
judge is reported. We summarize his findings. The parties
were married on October 11, 1930. She was a widow and
he a widower. On January 1, 1935, his employment as
manager of a packing company in Holyoke was terminated.
The plaintiff had approximately $4,500, the proceeds of
insurance on the life of her former husband, and the defendant was without funds except for a small amount.
They agreed to go into the meat business together each
sharing equally in the profits, and she furnished initially
$2,000 and later approximately $2,092 out of the balance
of her insurance money. He was to furnish his experience

and labor. The business was carried on by him in the name of Holyoke Beef Company and a business certificate to that effect was filed in the office of the city clerk of Holyoke. G. L. (Ter. Ed.) c. 110, § 5. At first he sold meats from a truck to stores. Subsequently a wholesale store was opened and the business was extended. The checking accounts of the business were in his name and he signed all checks. The plaintiff assisted part time in running the business by keeping the books, making deposits in banks, and filling out financial statements. The business prospered and from time to time profits were withdrawn and deposited in joint savings accounts payable to the survivor. Four parcels of real estate in Holyoke were acquired, payments being made from such savings deposits and the business checking accounts. Title to this real estate was taken in the name of both as tenants by the entirety, but neither of them knew the legal significance of "tenants by the entirety" as distinguished from "joint tenants." Purchase money mortgages on three of these parcels were discharged with money taken out of the business. Mortgages and mortgage notes on all these parcels were signed by both.

In the latter part of 1944 marital differences arose between them, and on January 13, 1945, the plaintiff left the defendant and has had nothing to do with the conduct of the business since then.

The judge found and ruled "that at all times up to January 13, 1945, the plaintiff and the defendant were equitable tenants in common of all the net assets of the Holyoke Beef Company and I rule that in equity the plaintiff is entitled to one half of the net assets of the Holyoke Beef Company as they were on January 13, 1945. I rule that the defendant holds one half of the net assets of the Holyoke Beef Company as they were on January 13, 1945, upon a resulting trust for the plaintiff. I rule that the plaintiff is not entitled to any net assets of the Holyoke Beef Company which accrued after she left the business on January 13, 1945. . . . I therefore order that further

hearings be held for the purpose of determining the value of the net assets of the Holyoke Beef Company on January 13, 1945, and for the entry of a final decree thereafter." From these findings of fact, rulings and order both parties appealed. These appeals have no standing and we do not consider them. G. L. (Ter. Ed.) c. 214, §§ 19, 26. *Carilli* v. *Hersey,* 303 Mass. 82, 87.

Subsequently a second judge referred the case to a master "to hear the parties, find the facts and report his findings to the court, together with such questions of law, arising in the course of his duty, as any party may request, as to the value on January 13, 1945, of the net assets of the defendant d/b/a Holyoke Beef Company and the value of the one half interest of the plaintiff in the said net assets which one half interest is held in trust by the defendant for the plaintiff . . . ." The master filed a voluminous report in which he made many subsidiary findings of fact and concluded by finding "the value of the plaintiff's one-half interest in such net assets with six per cent interest from January 13, 1945, to October 15, 1951, to be $32,742.39."

With reference to certain money which the plaintiff alleged the defendant personally withheld from the receipts he found: "On all pertinent evidence before me, I conclude and find that there was a substantial withholding of cash during the year 1944 from the cash receipts of the business, paid by customers in cash or currency, through the withholding of sales slips for sales paid for in cash or currency, and of the cash so paid by customers, in which the plaintiff and defendant participated, and that these receipts paid in cash or currency were not entered on the books of record of the business through their combined, voluntary action. On all the oral and documentary evidence submitted to me, I am unable to find, with any approximation to accuracy, the amount so withheld. Determination of any amount, by approximation or otherwise, is so conjectural that I am unable to make findings as to the exact or approximate total amount so withheld. I reach the same conclusion, wherever the burden of proof may rest as to

evidence in this regard." He declined to receive any evidence as to the value of the four parcels of real estate hereinbefore referred to and he made no finding as to the value of this real estate, apparently because of his interpretation of the order of reference to him and of the "Findings of Fact, Rulings and Order" of the judge who first heard this suit.

The plaintiff filed "Objections" to the master's report, a "Motion to Recommit" and a "Motion to Strike Out." From a denial of these motions by a third judge the plaintiff claimed appeals.

A fourth judge entered an interlocutory decree confirming the master's report on August 11, 1952, and on August 12, 1952, entered a final decree. This decree inter alia ordered the defendant to pay the plaintiff the sum of $33,895.67 which included interest from January 13, 1945, to the date of the decree. He also ordered the defendant to pay the plaintiff the sum of $4,993.54 additional on account of certain accumulations from the business, belonging to the plaintiff and the defendant in equal shares and standing in both their names on January 13, 1945, now held or appropriated by the defendant. This amount included the value of certain war savings bonds, certain shares of stock in the American Bosch Corporation, and the proceeds of certain joint savings accounts, with interest from the date of filing of the bill to the date of the decree. No reference was made in the final decree to the value of the real estate above referred to or to the other money which the plaintiff alleged the defendant improperly appropriated from the receipts of the business.

From the interlocutory decree confirming the master's report the defendant claimed an appeal, and both parties seasonably claimed appeals from the final decree. G. L. (Ter. Ed.) c. 214, §§ 19, 26.[1]

---

[1] Section 19 so far as pertinent reads: "A party aggrieved by a final decree of a justice of the supreme judicial court or a final decree of the superior court may, within twenty days after the entry thereof, appeal therefrom. An appeal from a final decree of a justice of the supreme judicial court shall be entered on the docket of that court, and an appeal from a final decree of the superior court shall be entered in the supreme judicial court. The completion of an appeal hereunder shall be governed by section one hundred and thirty-five of chapter two hundred and thirty-one."

At the outset of our consideration of this case we must take up a question of procedure. The defendant asserts in his brief but does not argue that the "plaintiff did not perfect her appeal[s] taken." The plaintiff in her brief ignores this point entirely although her brief has an "Addendum" in the nature of a reply to the defendant's brief. It is significant that in an "Order in Re Printing" the judge who entered these decrees stated, "and if pertinent, the following matters, no order for the preparation of papers and copies for the full court having been filed by the plaintiff . . . ." Inasmuch as this question goes to the jurisdiction of this court, although not argued, we cannot overlook it.

No party to litigation has an absolute or common law right to come to this court by way of an appeal or a bill of exceptions. The right to appeal is conferred by statute. G. L. (Ter. Ed.) c. 214, § 19. Section 19 requires that the completion of an appeal shall be governed by § 135 of c. 231. Section 135 reads so far as pertinent: "In order to carry any question of law . . . from any other court to the full court of the supreme judicial court upon appeal . . . the party having the obligation to cause the necessary papers . . . to be prepared shall give to the clerk . . . of the court in which the case is pending, within ten days after the case becomes ripe for final preparation and printing of the record for the full court, *an order in writing for the preparation of such papers and copies of papers for transmission* to the full court of the supreme judicial court" (emphasis supplied). Other provisions require the payment of the estimate for printing the record and the entry of it in the Supreme Judicial Court by the appealing party. A judge of the court in which the case is pending may, for cause shown after hearing, extend the time for doing any of the acts required.

Copies of the docket entries in this suit which are part of the record disclose that no "order in writing for the preparation of such papers and copies of papers" was ever given the clerk of the Superior Court. It does not appear from the copy of the docket entries that any of the other requirements of § 135 were complied with.

The absence of compliance with § 135 is fatal to the plaintiff's appeals. They are not before us and we give them no consideration. Nor does it matter that the record on the defendant's appeals includes all papers relating to the plaintiff's purported appeals which would enable us to pass upon the appeals if properly here. *Shapira* v. *Budish,* 290 Mass. 265, 267. *Styrnbrough* v. *Cambridge Savings Bank,* 299 Mass. 22, 24. *Baskin* v. *Pass,* 302 Mass. 338, 340–341. Compare *Trade Mutual Liability Ins. Co.* v. *Peters,* 291 Mass. 79, 84–85; *Schaffer* v. *Leimberg,* 318 Mass. 396, 406.

While the result may seem unduly harsh in this case, our reports are replete with decisions holding that the requirements of § 135 are mandatory and must be strictly complied with. The "statutory provisions now embodied in G. L. (Ter. Ed.) c. 231, § 135," introduce "rigid requirements as to the time of each step in perfecting an appeal." *Orth* v. *Paramount Pictures, Inc.* 311 Mass. 580, 581. The duty placed upon the plaintiff here by the statute to give a written order for preparation of papers "is an imperative provision. It is an essential preliminary step toward the entry of any case before the full court. Failure by any party, on whom the duty is cast, to comply with this prerequisite is fatal to the right of appeal." *Niosi* v. *Leveroni,* 274 Mass. 115, 117. The statute is "inflexible in its terms. It was designed to specify the exact times within which the several steps must be taken. It leaves nothing to the discretion of the court." *McCarty* v. *Boyden,* 275 Mass. 91, 93. "The clear command conveyed by these words of the statute is that there must be a 'written order' to prepare the papers. Nothing short of compliance with that imperative provision will enable a party to complete his appeal. The words express an unescapable direction." *Cherry* v. *Auger,* 300 Mass. 367, 371. *Bass River Savings Bank* v. *Nickerson,* 302 Mass. 235. *Petersen* v. *Frye,* 320 Mass. 727. Compare *Home Owners' Loan Corp.* v. *Sweeney,* 309 Mass. 26, 29–32; *Sherrer* v. *Sherrer,* 320 Mass. 351, 352–354. See also *Barrell* v. *Globe Newspaper Co.* 268 Mass. 99, 103–105, and *Gifford* v. *Commissioner of Public Health,* 328 Mass. 608,

617–618, where an order for a consolidated record was recognized as proper. Because the plaintiff's appeals are not properly before us they must be treated as no appeals at all. She cannot have the final decree modified in her favor on the appeals of the defendant. *Brennan* v. *Bonnoyer,* 319 Mass. 307, 309. *Schneider* v. *Armour & Co.* 323 Mass. 28, 31. This principle has been decided too many times to require more than a reference to one or two authorities.

We now consider the defendant's appeals. There was no error in the entry of the decrees appealed from. There are four objections to the master's report all of which become exceptions. None of them raises a question of law. They relate to findings of fact by the master. The evidence before the master is not reported and consequently the subsidiary facts found by him must stand unless inconsistent with each other, contradictory, or plainly wrong. *Dodge* v. *Anna Jaques Hospital,* 301 Mass. 431, 435. *Vitelli* v. *Ryder,* 329 Mass. 119, 121–122. We are satisfied that the subsidiary facts found by the master warrant the conclusions found by him.

We have examined the evidence before the judge who first heard this case and find no error in his findings and rulings. Such findings and rulings are supported by the evidence.

There was no error in the final decree in so far as it included further allowances to the plaintiff in the sum of $4,993.54. The order in the final decree for the payment of this additional money to the plaintiff by the defendant is consistent with the subsidiary findings of the master. *Vitelli* v. *Ryder, supra,* at page 123.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs of this appeal.*