VAPPI & COMPANY, INC. *vs.* JOSEPH L. SULLIVAN & another.

Middlesex.    March 2, 1954. — June 8, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Contract,* Building contract, Subcontract.

Under a subcontract with a general contractor requiring the subcontractor
to perform "according to the plans and specifications" of the archi-
tect a certain portion of construction work which the general con-
tractor had contracted with a landowner to do, the measure of the
subcontractor's obligation to the general contractor respecting the
subcontractor's work was the same as that of the general contractor
to the owner with respect thereto.   [466–467]

In a contract for "power shovel excavation," damage to a city culvert
alleged to have resulted from the excavation was governed by a gen-
eral provision requiring the contractor to "take every reasonable and
possible precaution to protect . . . property from . . . damage on
account of" his work, and not by certain provisions imposing absolute
liability on him for property damage in various circumstances.   [467]

CONTRACT OR TORT.    Writ in the Superior Court dated
July 11, 1949.

The defendants alleged exceptions following a verdict for
the plaintiff at the trial before *Hurley,* J.

*John A. Daly,* for the defendants.

*Charles C. Worth,* for the plaintiff.

WILLIAMS, J.   The plaintiff had a written contract with
B & M Realty Company, hereinafter referred to as the
owner, to build for it a so called shopping center on the
southerly side of Riverside Avenue in Medford.   The speci-
fications which accompanied and were a part of the con-
tract contained the following provisions:

"PUBLIC UTILITIES

"The Contractor shall take suitable care of all public
utilities encountered in connection with the work.   He shall
send notices, make all necessary arrangements and provide

all services required for the care of gas mains, water pipes, sewer pipes, telephone and telegraph conduits, cables, and other equipment or property, assuming all responsibility and paying all costs for which the Owner and the owner of the property may be liable."

"WORK INCLUDED

"Furnish all labor, materials, tools, equipment, appliances and services necessary to complete the work of demolition, clearing the site, excavation, removal of debris and removal of excavated material in a speedy, safe and satisfactory manner."

"PROTECTION

"Contractor shall take every reasonable and possible precaution to protect life and property from accident and damage on account of this work.

"Protect sidewalks, streets, curbs, etc., used for trucking or otherwise. Repair and make good all damages.

"Provide and maintain barricades, footwalks and railings.

"Provide and erect danger signs.

"Provide and maintain lighted lanterns at night for public safety.

"Protect all public utilities which are in the way of construction and also notify the public utility companies of any additional protection which should be provided by them.

"The Contractor will be held responsible for bank cave-ins on account of this work and shall pay for all damages caused by such cave-ins."

"SHEET PILING

"Where necessary to protect sidewalk banks and banks of adjoining property, this contractor shall install suitable wood or steel sheet piling to sufficient depth to properly support the banks until permanent foundation walls are constructed."

On July 12, 1948, the plaintiff contracted in writing with the defendants for them "to furnish all material and per-

form all work necessary to complete the Power Shovel Excavation and backfill for the Shopping Center . . . according to the plans and specifications (details thereof to be furnished as needed) of Herman L. Feer Architect . . . ." The defendants began to excavate under their subcontract on July 14. In performing the work they used a power shovel weighing from thirty-two to thirty-four tons. In excavating along the easterly boundary of the land on which the shopping center was being constructed a brick culvert was uncovered, which was located on the adjoining land to the east, and ran along the westerly boundary of the adjoining land from Riverside Avenue in a southerly direction to the Mystic River. This culvert, which was laid in a right of way known as Gravely Creek Road, was owned by the city of Medford and was used to convey storm water from the highways in the vicinity to the river. The top of the culvert was three or four feet below the surface of the ground, and wooden sheathing, which had been installed when the culvert was built, extended along the culvert on the side toward the shopping center from two feet below the base to two feet above the top. There was evidence that in bringing the power shovel to the land which was to be excavated the defendants had driven the power shovel over the culvert. There was also evidence that in excavating to the easterly line of the excavation the operator of the power shovel caused its pan to be thrown over the sheathing, thereby pulling the sheathing down into the excavation. On the night of July 20 the culvert collapsed and the excavation was flooded. The culvert had cracked for a distance of seventy-eight feet on the side toward the excavation. Photographs which were in evidence show the broken culvert and the sheathing leaning toward the flooded excavation. The remains of a bank of earth appear at the base of the sheathing on the edge of the excavation. The defendants were notified by the plaintiff that it was their responsibility to repair the culvert but they refused to do so, and the plaintiff caused the necessary repairs to be made at its own expense.

This action is in contract or tort to recover the cost of the repairs. The declaration contains two counts in each of which it is alleged that the defendants were obligated to repair and make good all damage to adjoining land resulting from their work in excavating; that they damaged the culvert and sheathing; and that they have failed to make good the damage. In count 1 it is alleged simply that the defendants caused the damage, while in count 2 it is alleged that they caused the damage by their negligence. The jury returned a verdict for the plaintiff on count 1 and for the defendants on count 2. The case is here on the defendants' exceptions, those argued being to portions of the judge's charge.

The judge, after reading to the jury excerpts from the specifications, instructed them that the specifications do not state "what property the contractor shall take every reasonable and possible precaution to protect from damage on account of this work; but it includes any property that may be damaged as a result of the work, whether on the site or on the adjoining site. Any property that is damaged as a result of this work must be repaired and made good by the contractor. . . . Whatever was the measure of the obligation of Vappi & Company to the B & M Realty Company is the measure of the obligation of Sullivan & Sons to Vappi & Company . . . . If the damage was the result of the excavating by that power shovel — and you have that to determine . . . then Sullivan & Sons is responsible to Vappi & Company for the reasonable cost of repairing and making good that damage, just as Vappi & Company would be responsible to the B & M Realty Company for repairing and making good under their general contract."

The judge was correct in charging that, if the damage was the result of excavating with the power shovel, the measure of the obligation of the plaintiff to the B & M Realty Company was the measure of the obligation of the defendants to the plaintiff. *Regan* v. *Keyes,* 204 Mass. 294, 303. When a subcontractor undertakes to do a portion of the contract work according to plans and specifications binding on the general contractor, such plans and specifications become

a part of his contract, and he assumes the obligation of the general contractor in relation to the particular part of the work to be performed. *Ehret Magnesia Manuf. Co. Inc.* v. *Gothwaite*, 149 Fed. (2d) 829.

There was error, however, in the instructions that "any property that is damaged as a result of this work must be repaired and made good by the contractor." The general duty of the contractor, as stated in the specifications under the general heading "Protection," is to "take every reasonable and possible precaution to protect life and property from accident and damage on account of this work." This provision does not impose an absolute liability for damage. There are other provisions which in certain described circumstances do impose such liability. In the care of public utilities, including sewer pipes, the contractor assumes the responsibility to pay all costs for which the owner and the owner of the property may be liable. He must "repair and make good all damages" to "sidewalks, streets, curbs, etc., used for trucking or otherwise." He is accountable for "damages" resulting from bank cave-ins. If the damage to the culvert were found to have occurred in such manner as to impose liability under one or more of these provisions, the plaintiff could recover without proof of the defendants' negligence. The error in the charge was in submitting the case to the jury, except for the matter of damages, on the single issue of causation. This resulted from a mistake in interpreting the provision "Repair and make good all damages" as applying to the entire work of excavation. We think this provision was intended to relate only to the obligation to "Protect sidewalks, streets, curbs, etc., used for trucking or otherwise." This appears from the manner in which the two sentences were set apart from other protective provisions in a separate subparagraph. The jury could not properly have returned a verdict for the plaintiff under count 1 without finding that the injury to the culvert resulted from a breach of one of the obligations to which absolute liability for damage was attached.

*Exceptions sustained.*