NEW ENGLAND INSULATION CO. *vs.* BEACON CONSTRUCTION COMPANY OF MASSACHUSETTS INC. & another.

Suffolk. February 9, 1961. — April 6, 1961.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract,* Building contract.

In the circumstances of the making of a building contract, a subcontract for the heating work, and a contract between the subcontractor and an insulating concern for insulating the heating apparatus, all the heating specifications of the general contract were made part of the insulating contract, including specifications precluding treatment of certain work done by the insulator as extra work for which the insulator could re-

cover additional payment under a bond given by the general contractor for the benefit of persons furnishing labor and materials to the project, even though the insulator's acceptance of the subcontractor's order for the insulating work referred only to other parts of the heating specifications and the insulator and the subcontractor agreed on a price for the alleged extra work before it was performed.   [410–411]

Certain specifications of a building contract forming part of a contract between the heating subcontractor and an insulating concern for insulating, for a lump sum, the heating system to be installed contemplated performance of all work required for a complete system "substantially" as shown by the plans and specifications, and precluded treating as extra work, entitling the insulator to additional compensation, certain work by the insulator brought about when it was found necessary to run the heating pipes over a longer route than originally planned.   [411]

CONTRACT.   Writ in the Superior Court dated February 11, 1960.

The action was heard by *Dewing, J.*

*Richard H. Davis,* for the plaintiff.

*Robert J. Sherer,* for the defendants.

SPIEGEL, J.   This is an action of contract on a "Payment Bond on General Contractor" given by the defendant Beacon Construction Company of Massachusetts Inc. (hereinafter referred to as Beacon) as principal and the defendant Maryland Casualty Company as surety in favor of the Portsmouth Housing Authority, a public instrumentality of the State of New Hampshire.[1]   A judge of the Superior Court reserved and reported the case without decision upon the plaintiff's declaration, the defendants' answers, the oral testimony of a witness which he found to be true, and a statement of agreed facts.

The bond was executed and delivered in connection with a contract entered into on March 12, 1958, between Beacon and the Portsmouth Housing Authority for the construction of a housing project in Portsmouth, New Hampshire. The general and special conditions, the specifications, the plans and the drawings all constitute part of the contract.

On April 9, 1958, Beacon and C. H. Babb & Co. (Babb) entered into a subcontract covering a portion of the work

---

[1] It was stated in both briefs that this was the same bond as that involved in *Robinson Clay Prod. Co.* v. *Beacon Constr. Co. of Mass. Inc.* 339 Mass. 406.   REPORTER.

342 Mass. 407                                                                 409

New England Insulation Co. *v.* Beacon Construction Co. of Mass. Inc.

called for by the general contract (to wit: furnishing all materials and performing all labor and completing all the work described as plumbing and heating). The general contract was incorporated by reference in the subcontract.

On May 7, 1958, a confirmation of a purchase order was issued by Babb to the plaintiff for the following: "Insulation Work — Plumbing & Heating in dwelling units and boiler rooms and main building. Including oil piping in accordance with plans and specifications Gosling Meadows, Portsmouth, New Hampshire. Total Net Price . . . $26,500.00."

On May 23, 1958, the plaintiff acknowledged the order "to proceed with the insulation work on the plumbing and heating systems . . . as shown on the plans and as called for in Sections 28–52, Heating, and 16, plumbing," of the specifications. (Condition 9 on the back of the acknowledgment read as follows: "Covering of flanges, on piping, fittings, valves, etc. not included unless specially mentioned in the within proposal.")

Later, while Babb was in the process of installing pipes running from the basement to radiators it was discovered that the pipes could not be run straight up from the basement, as was shown in the plans, but would have to be installed in a circuitous fashion requiring extra pipe, fittings and labor.

There was testimony given by an officer of New England Insulation Co. (New England) which the trial judge found to be true that Babb requested New England to apply insulation to the additional pipes and fittings and that it was agreed that the price of $3,796 was a fair price for the additional work. New England began to install the additional insulation before Babb applied to Beacon or the Portsmouth Housing Authority for additional compensation in connection with the extra work. When, at last, Beacon presented Babb's claim which included the claim of New England to the Housing Authority it was rejected by the contracting officer, on the advice of the heating engineer, on the ground that the work was not extra under the terms

embodied in the specifications and for the further reason that the claim was not seasonably presented. Upon resubmission of the claim it was again rejected for the same reasons.

New England brings this action on the bond for the $3,796 plus interest owed it by Babb.

New England may bring this action on the bond. See *Robinson Clay Prod. Co.* v. *Beacon Constr. Co. of Mass. Inc.* 339 Mass. 406.

Beacon's contract with the Portsmouth Housing Authority was subject to the language found in section 6 of the heating specifications that "a. It is the intent of this specification to cover all work and material necessary for erecting complete, ready for continuous use, a heating system substantially as shown on the accompanying drawings, or as hereinafter described. b. All work shown on drawings is intended to be approximately correct to scale, but figured dimensions and detailed drawing are to be followed in all cases. c. The drawings shall be taken in a sense as diagrammatic. Sizes of pipes and methods of running them are shown *but it is not intended to show every offset and fitting nor every structural difficulty that will be encountered during the installation of the work.* d. The alignment of pipes shall be varied from that shown on drawings *without extra expense to the owner,* where necessary on account of slight architectural changes, or to avoid the work of any other trades. He shall furnish such parts and pieces as may be necessary to complete the fixtures and apparatus in accordance with the best practice of the trade and to the satisfaction of the Architect" (emphasis supplied).

Beacon's subcontract with Babb specifically adopted the specifications and language above quoted. See *Vappi & Co.* v. *Sullivan,* 331 Mass. 463, 466-467; *Ehret Magnesia Mfg. Co. Inc.* v. *Gothwaite,* 149 F. 2d 829 (Ct. App. D. C.).

The insulation contract between Babb and New England was also subject to the specifications embodied in the general contract. The confirmation of the purchase order sent from Babb to New England mentioned that the work was to

be done "in accordance with plans and specifications." New England's acknowledgment of Babb's order stated that the insulation work was to proceed "as called for in Sections 28–52" of the heating specifications. It is just prior to sections 28–52 (i.e. section 6) and in the same division (i.e. heating) of the specifications that the language above quoted from the specifications appears. It cannot be assumed because the plaintiff in its acknowledgment to Babb only made reference to "Sections 28–52" that thereby it was not bound by any of the other specifications, the plans and the other terms of the general contract. To the contrary, it must be assumed that New England was aware of the intent of the heating specifications, the plans and the other terms of the general contract. The negotiations indicate that all were incorporated in the contract between Babb and New England. See *Farm-Rite Implement Co.* v. *Fenestra Inc.* 340 Mass. 276, 282, n. 6.

Contracts for a lump sum ascertained and specified, such as the contract between Babb and New England, are usually entire. Hudson on Building Contracts (7th ed.) p. 165. Performance of an entire contract includes everything necessary to complete the whole. Hudson on Building Contracts (7th ed.) p. 174. The insulation contract included no specified amount of work and the specifications called for a completion of a whole heating system. In an entire contract a "contractor can recover nothing beyond his contract price, notwithstanding an unexpected difficulty in the performance of the work . . .." Hudson on Building Contracts (7th ed.) p. 178.

The work performed cannot be considered extra work under the specifications of the general contract which were adopted in the contract between Babb and New England; therefore the plaintiff is unable to prevail.

*Judgment for the defendants.*