M. L. SHALLOO, INC. *vs.* RICCIARDI AND SONS
CONSTRUCTION, INC. & others.

Worcester.   January 4, 1965. — March 8, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Contract*, Building contract, Waiver.  *Waiver.  Equity Pleading and
Practice*, Rehearing.

A conclusion that there was a waiver of a provision of a subcontract on
a construction project that an agreement for extra work must be "in
writing" was proper where it appeared that extra work done by the
subcontractor was done either at the request of the general contractor
or at the request of the architect and with the knowledge of and with-
out objection by the general contractor.  [685–686]

The grading subcontractor on a construction project was entitled to re-
cover from the general contractor for work, beyond that called for by
the subcontract, done by the subcontractor either at the request of the
general contractor or at the request of the architect and with the knowl-
edge of and without objection by the general contractor.  [686]

Facts found by a master respecting the information furnished to the
grading subcontractor on a construction project as to the site of the
job and its water content and respecting a wet condition of the site
encountered by the subcontractor while performing the subcontract were
insufficient to permit a determination of the subcontractor's right to re-
cover from the general contractor for extra work done because of the
wet condition, and further hearings in the trial court to obtain adequate
findings on the issue were ordered by this court.  [688–689]

Where a subcontractor on a construction project left the job after sub-
stantially but not fully completing his work, some of which was not
done in accordance with the subcontract "in all particulars," a conclu-
sion that he was barred of recovery for certain work by want of an at-
tempt in good faith to perform the subcontract fully or by intentional
and unexcused deviations therefrom was not required on the facts.
[689–690]

BILL IN EQUITY filed in the Superior Court on October 6,
1961.

The suit was heard by *Meagher*, J., on a master's report.

*Sally A. Corwin* (*Joseph M. Corwin* with her) for the
plaintiff.

*Robert V. Mulkern*, for Ricciardi and Sons Construction,
Inc., and *Morton C. Jaquith*, for the Southern New Eng-

land Conference Association of Seventh Day Adventists, submitted briefs.

CUTTER, J. The plaintiff (Shalloo) brings this bill to reach and apply funds of the defendant, Ricciardi and Sons Construction, Inc. (Construction refers to the corporation as distinguished from Ricciardi individually), in the hands of Southern New England Conference Association of Seventh Day Adventists (the Adventists) and of a bank. Shalloo seeks to recover (a) amounts alleged to be owed to it upon a subcontract with Construction, which was prime contractor upon certain work ordered by the Adventists, and (b) for extra work.

The case was referred to a master, whose report was confirmed. A final decree was entered that Construction was indebted to Shalloo in the sum of $3,319.72[1] (with interest and costs), which was to be paid to Shalloo by the Adventists from funds retained under the prime contract. Shalloo appealed. The facts are stated on the basis of the master's report.

Construction agreed by a prime contract to perform all work for the Adventists to develop a site for a school, as shown by certain plans and specifications. Ricciardi, a representative of Construction, Shalloo's president, and Shalloo's superintendent met at the site. Ricciardi furnished Shalloo "the contract documents, specifications, a grading plan and a test boring report [included in the specifications] relating to the site." The boring report "showed no water content within the contract area" (see fn. 2, infra). "Ricciardi told Shalloo that . . . [Construction] would do all the engineering . . . with reference to the setting of stakes in connection with . . . work Shalloo was to do." Shalloo thereafter executed a subcontract to do certain of the work. It provided, among other things,

---

[1] This amount is $7,629.72, the portion of the subcontract price found by the master not to have been paid by Construction to Shalloo less $3,680 spent by Construction to complete work which Shalloo should have done under the subcontract, and $630 paid in 1961 by Construction for use of a grader to modify the grade of some loam spread by Shalloo.

(a) that "[u]pon prepared subgrade, loam shall be . . . spread . . . to the lines and grades and dimensions shown on the [p]lan," and (b), in par. Fifth, "No extra work . . . under this contract will be recognized or paid for, unless agreed to in writing before the work is done . . . ."

Shalloo completed all but three or four per cent of the subgrading before suspending work on December 9, 1960, for the winter. Ricciardi was at the site every day. On May 22, 1961, Shalloo resumed subgrading and spreading loam. During the subgrading, Shalloo's employees stripped loam and piled it as directed by the architect or Ricciardi. "When an area was stripped the engineers" then "set the stakes in it with the necessary markings . . . to gain the required subgrade. . . . When the rough cut subgrade was reached the engineers checked it and if corrections were needed . . . [they] set new stakes . . . and . . . [Shalloo's] employees did . . . grading to meet the requirements of those stakes."

After May 22, 1961, a dispute arose concerning whether the subgrade preparation had been properly done. This culminated in Shalloo's leaving the job. Construction retained others to do the work left undone. Despite this the master found that, although Shalloo "did not fully perform its contract, there is a balance due it on the contract for work that it did do." Shalloo's right to recover this balance (see fn. 1) is no longer open to dispute for Construction took no appeal from the final decree and is entitled to no more favorable decree. See *Turgeon* v. *Turgeon*, 330 Mass. 402, 409.

"While . . . [Shalloo] was working . . . in both 1960 and 1961 it did certain work at the request of either the architect of the . . . Adventists or . . . Ricciardi which . . . [was] not within the written [sub]contract . . . for which . . . [Shalloo] claims compensation as extras. In none of these instances was there any compliance with" par. Fifth of the subcontract "requiring an agreement in writing for any extra work," but "Ricciardi knew of such extra work . . . either by . . . his request for it or his

presence on the job site and knowing from observation . . . and making no objection.''

The master made findings with respect to the nature and value of this extra work as follows: (A) extra work extending the limits of the football field beyond those shown in the grading plan, $806.60; (B) similar extra work on the baseball field, $397.70; (C) extension of the southwest corner of the site, $746.60; (D) revision of subgrading of a perimeter road, $930; and (E) extra work caused by the wet condition on the slopes of the site, $10,200.[2]   The total of these items was $13,080.90.   The issues presented for decision all relate to this extra work.

1.   With respect to the first four items of extra work, the subsidiary findings fully support the master's conclusion that the items ''were not within the written contract.'' The items were work in addition to those shown on a plan or plans in accordance with which Shalloo was working. The situation with respect to the extra work because of the wet area is discussed separately below.

Paragraph Fifth of the subcontract ''obviously could not prevent oral contracts for extra work, for the parties had power to waive or alter that provision orally at any time.'' See *Zarthar* v. *Saliba*, 282 Mass. 558, 560.   See also *Bartlett* v. *Stanchfield*, 148 Mass. 394, 396; *Vitti* v. *Garabedian*, 264 Mass. 1, 6; *Cueroni* v. *Coburnville Garage, Inc.* 315 Mass. 135, 138–139.   Cf. *Stuart* v. *Cambridge*, 125 Mass. 102, 109–110 ('' [n]o evidence . . . of any waiver'').   The master's findings establish that either the Adventist's architect or Ricciardi directed Shalloo to do each of the first

---

[2] In November, 1960, a very wet condition was found on the slopes of the site.   The state of the affected area prevented use of a scraper to remove loam.   The situation was called to Ricciardi's attention.   Ricciardi told Shalloo ''to keep on'' rather than postpone the work as Shalloo wished to do. Shalloo's superintendent ''learned . . . [that] an abandoned subterranean race track . . . caused water to collect.''  Shalloo succeeded in remedying the condition so that it could continue work.   Five more days of work were necessary than if the condition had not existed and the ''fair value of moving wet earth . . . is twenty-five cents per cubic yard more than the fair value of moving dry earth and loam.''   The ''wet condition was not known to Shalloo nor . . . [was it] set forth in the [t]est [b]oring [r]eport submitted to Shalloo'' when its bid was being considered.

four items of the extra work and that "Ricciardi knew of such extra work." From these findings, we think that waiver of par. Fifth, if it is applicable at all to work not covered by the subcontract (see *Howard* v. *Harvard Congregational Soc.* 223 Mass. 562, 565; *Farm-Rite Implement Co.* v. *Fenestra, Inc.* 340 Mass. 276, 287), should be inferred.

The subcontract, although somewhat confusing in form, we interpret as calling for the work to be done "according to the plans and specifications . . . of . . . [the] [a]rchitect, and to . . . [his] full satisfaction."[3] In connection with this provision also must be read the provisions of the prime contract set out in the margin.[4] We take that contract to have been one of the contract documents which the master found was shown to Shalloo when the subcontract was being made. Shalloo was entitled to rely on its provisions. See *Vappi & Co. Inc.* v. *Sullivan*, 331 Mass. 463, 466–467. In the circumstances, the prime contract and the accompanying documents not only set limits on the work to be done under the subcontract but defined for Shalloo the authority of the architect and of Construction, represented by Ricciardi. Shalloo should have been allowed to recover for the first four items of extra work.

2. As has been noted, the test boring report, which was not made a part of the master's report,[5] was given by Ricci-

---

[3] We think that this requirement applied to all the work under the subcontract despite confusing punctuation which might be taken to restrict the quoted words merely to restoring areas outside the limits of the grading which incidentally might be disturbed in the course of the work.

[4] Paragraph 18 of the prime contract provided, in part, "The [g]eneral [c]ontractor, being fully responsible for the general management of the project, shall have full general directing authority under the [a]rchitect as to mode of procedure of operations in the execution of all sub-contracts, if any. All sub-contractors whether the [c]ontractor's or the [o]wner's shall not only cooperate with each other but shall conform to all directions of the [g]eneral [c]ontractor, given, to further the progress of the work."

[5] An affidavit, submitted in support of a motion to strike portions of the Adventists' brief, establishes (a) that the trial judge directed inquiry of the master whether the test boring report was incorporated in the master's report, and (b) that the master replied that the test boring report was not incorporated. The master's finding (see fn. 2, which, so far as the record indi-

ardi to Shalloo during the subcontract negotiation. The master found (fn. 2) that the "boring report showed no water content within the contract area" and that the wet condition was not "set forth in the . . . [r]eport."[6] The master's report gives no indication of any warning to Shalloo not to rely on the report. Cf. *Arthur A. Johnson Corp.* v. *Commonwealth,* 318 Mass. 88, 93; *Benjamin Foster Co.* v. *Commonwealth,* 318 Mass. 190, 192. The provisions of the short subcontract in no manner excluded Shalloo's reliance on the plans and specifications and test boring report (which the master found was "included in the [s]pecifications"). Cf. *Long* v. *Athol,* 196 Mass. 497, 502–503 ("amounts . . . of materials . . . approximate only"); *Kennedy* v. *Boston,* 286 Mass. 148, 155–156 (contract provided that city should not be held responsible for boring). Cf. also *Stuart* v. *Cambridge,* 125 Mass. 102, 108–109 (contract interpreted as requiring whatever work necessary to produce a firm foundation). Indeed, the subcontract essentially incorporated the plans and specifications by reference, so that the subcontract in effect contained whatever representation as to subsoil conditions was made by the boring report. Thus if Shalloo was reasonably expected to rely and did rely upon that report, and if the report, together with other statements made in behalf of Construction, did represent the site to be one which would normally be dry, then the wet condition actually found on the site might constitute a breach of a warranty for which Shalloo

---

cates, may have been based in part upon evidence other than the boring report itself) as to the content and effect of the report is thus conclusive. No motion was filed to recommit the master's report to have the test boring report included. Accordingly, excerpts from the test boring report, appended to the Adventists' brief, are not before us because not shown by the record to have been properly brought before the trial judge, if before him at all. See *Gorey* v. *Guarente,* 303 Mass. 569, 570. See also *Staples* v. *Collins,* 321 Mass. 449, 450; *Lucier* v. *Williams,* 323 Mass. 458, 462–463.

[6] He also found that Shalloo "dug with a hand shovel several holes on the site in scattered places to a depth of not over one foot for the purpose of learning the type of soil and encountered no water." This minor direct investigation in behalf of Shalloo, in the circumstances revealed in the master's findings, did not in itself prevent Shalloo from relying upon the boring report, if it, taken in conjunction with the negotiations, constituted a representation and implied warranty of the conditions to be encountered.

could recover. · See *Hollerbach* v. *United States,* 233 U. S.
165, 169–172 (which, however, in its discussion of provisions not found in this subcontract, may go beyond the rule
of the Massachusetts cases already cited); *Christie* v.
*United States,* 237 U. S. 234, 239–242; *United. States* v.
*Spearin,* 248 U. S. 132, 136–137; *United States* v. *Smith,*
256 U. S. 11, 16–17; *Pitt Constr. Co.* v. *Alliance,* 12 F. 2d
28, 30–32 (6th Cir.); *State* v. *Hartford Acc. & Indem. Co.*
138 Conn. 334, 338–341 (clear assertions as to rock content); *Faber* v. *New York,* 222 N. Y. 255, 259–261; *Depot
Constr. Corp.* v. *State,* 41 Misc. 2d (N. Y.) 764 (Ct. Cl.).[7]

Among facts found by the master which tend to suggest
that the parties understood that Shalloo would rely upon
the boring report are: (a) that Shalloo was given the report by Construction while examining the site when preparing to bid; (b) that Construction was to "do all the
engineering required"; (c) that the work was to be in connection with a prime contract to be "commenced forthwith
and . . . substantially completed within" ninety days; and
(d) that Shalloo commenced work at once upon acceptance
of its bid without waiting for the execution of a written
subcontract, signed three weeks after Shalloo's work began.
All these circumstances may indicate that Shalloo was not
expected to undertake any independent investigation, but
they are not conclusive.

We think that the master has not found adequately (1)
just what was said or shown in behalf of Construction to

---

[7] See also *Howard* v. *Harvard Congregational Soc.* 223 Mass. 562, 564–566
(applicable by analogy only); *Bloom, South & Gurney, Inc.* v. *Mitchell,* 289
Mass. 376, 378–379; *Wunderlich Contr. Co.* v. *United States,* 240 F. 2d 201,
205 (10th Cir.); *Bradford Builders, Inc.* v. *Sears, Roebuck & Co.* 270 F. 2d
649, 654–655 (5th Cir.); *Walla Walla Port Dist.* v. *Palmberg,* 280 F. 2d 237,
243–248 (9th Cir.); *E. & F. Constr. Co.* v. *Stamford,* 114 Conn. 250, 257–261;
*McCree & Co.* v. *State,* 253 Minn. 295, 308–315; *Cauldwell-Wingate Co.* v.
*State,* 276 N. Y. 365, 375–377; *Funk* v. *School Dist. of Abington,* 321 Pa. 435,
437–438; Corbin, Contracts, § 1333, pp. 371–373; Williston, Contracts (3d ed.)
§ 619, p. 744; (2d ed.) § 1966. Cf. *Construction Aggregates Corp.* v. *State,*
148 Conn. 315, 323–327 (both parties dealing with unknown quantities, and
contractor was "made aware by . . . the boring data sheet, that the . . .
[State] did not profess to do more . . . than to present the data it had obtained by its borings"); *O'Neill Constr. Co. Inc.* v. *Philadelphia,* 335 Pa.
359, 365–368 (not shown that relevant subsoil was different from what the
plan indicated).

Shalloo about the job site, especially concerning its water content, and the presence or absence of underground watercourses, water collection areas, and water pockets, or (2) the contents of the boring report and the comments by Construction concerning it, or (3) the precise nature and extent of the underground condition and ''race track'' which caused the wet condition. We are not told by the master what the ''race track'' was, or why it caused a wet condition, or whether such a condition would ordinarily be revealed by a boring report of the type actually made or by a properly made boring report, or whether the wetness was unusual, seasonal, or continuous, or whether it was known or should have been known to Construction. All these matters may well bear upon whether sufficient representations were made in the boring report, or otherwise on behalf of Construction, to permit any recovery (under the cases just cited) by Shalloo, for breach of warranty, because of the wet condition. See fn. 7 and related portion of the text of this opinion.

It is not practicable to deal with this aspect of the case without more complete and informative findings, sufficient to enable the Superior Court or this court to reach a proper conclusion. Accordingly, there must be further hearings in the Superior Court either before the court or before a master, as that court may determine. See *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 224–225; *Coletti* v. *Hart*, 338 Mass. 174, 177–178.

3. The facts found in the master's report do not cause us to conclude that there was such unexcused or intentional failure by Shalloo to complete the subcontract,[8] or to at-

---

[8] The master found that the work left undone when Shalloo left the job site required spreading only 200 cubic yards of loam, and that some of Shalloo's work ''was not in all particulars'' done as required. Nevertheless, he concluded that, although Shalloo, ''did not fully perform its contract, there is a balance due it on the contract for work that it did do under the contract.'' This conclusion implies substantial performance by Shalloo. The master made due allowance to Construction for the cost of making good any deficiencies in Shalloo's performance. No findings require the conclusion that Shalloo did not perform in good faith or that it intentionally deviated from the contract.

tempt to do so in good faith, as to bar Shalloo from any recovery on the subcontract. The first four items of extra work were outside the contract in any event. If there can be any recovery for extra work caused by the wet condition, that will be in effect a recovery for a breach of the subcontract by Construction.

4. The final decree is reversed. When a new final decree is entered it shall provide in any event that Shalloo is entitled to recover from Construction, not only the amounts declared by the former final decree to be owed to Shalloo, but also the amounts found by the master to be the fair value of the extra work, described in his report in par. 23, subpars. A, B, C, and D, with interest. Whether Shalloo may recover the whole or any part of the cost of the extra work caused to Shalloo by the wet condition (see master's report, par. 23, subpar. E) is to be determined after further hearing as herein provided. Shalloo is to have costs of appeal.

*So ordered.*