Coven, J.
This is an action by the subcontractor against both the general contractor and bond surety company to recover payment for alleged extra labor and materials. Judgment was entered for the plaintiff, and the defendants have appealed pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8C.
The defendant herein, The Aulson Co., Inc. (“Aulson”), contracted in 1994 with the Revere Housing Authority to serve as general contractor for the Veteran’s Development Project (the “Project”) which entailed the de-leading of 276 apartment units, the painting of all new and existing surfaces and the installing of vinyl siding. A set of bid documents describing the nature and extent of the project included a Project Manual with instructions to bidders, general conditions and specifications governing the work to be performed, and three drawings. The plaintiff, Dominic Gentile Painting Co., Inc. (“Gentile”), was the successful bidder on the painting subcontract and on October 17,1994, executed a statutory form subcontract with Aulson to complete the painting work for $52,960.00.
After the commencement of work on the project, Gentile disputed its responsibilities under the subcontract. Specifically, Gentile contended that it was not required to paint the rear or front door jambs, thresholds or kickplates in any of the 276 units. Gentile and Aulson submitted their dispute to Laboratory Testing *20 Services (“LTS”).[2] LTS issued a written opinion that Gentile was required to do all painting work on the project, including- the disputed work for which Gentile claimed it had no responsibility.[3] Gentile completed the work under protest, and thereafter submitted a written request for a change order in the total amount of $38,430.00 for alleged extra painting work identified in the request as doorjambs, thresholds, kickplates and entrance ways.
Upon Aulson’s refusal to pay $38,430.00 more than the subcontract price, Gentile commenced suit in Superior Court against Aulson for breach of contract and against defendant Firemen’s Insurance Company of Newark, N.J. (“Firemen’s”) on a G.L.c. 149 claim. The bond claim was dismissed by stipulation of the parties prior to trial. The action was subsequently transferred to the Woburn District Court for trial on the remaining breach of contract claim.
After trial, the judge made a finding for Gentile in the amount of $31,119.00, specifically stating that the damages were in quantum meruit.[4] Although the trial judge’s finding was against Aulson only, the clerk erroneously entered judgment against both Aulson and Firemen’s.
1. As Gentile argues on this appeal, the parties’ contract was unambiguous despite the dispute as to the extent of Gentile’s responsibilities. Interpretation of the contract was thus a question of law, not of fact. Lumber Mut. Ins. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995); Lawrence-Lynch Corp. v. Department of Environmental Mgm., 392 Mass. 681, 682 (1984); Sarvis v. Cooper, 40 Mass. App. Ct. 471, 475 (1996). A reviewing court is not bound by a trial judge’s conclusions of law as to the proper construction of an unambiguous contract. Charles River Park, Inc. v. Boston Redevelop. Auth., 28 Mass. App. Ct. 795, 796 n.1 (1990), citing Robert Indus., Inc. v. Spence, 362 Mass. 751, 755 (1973). See also St. Germain & Son, Inc. v. Taunton Redevelop. Auth., 4 Mass. App. Ct. 46, 51 (1976) (where interpretation is unaffected by findings of fact, and the trial judge has made no findings of fact, the reviewing court is in as good a position as the trial judge to interpret an unambiguous contract).
Construing the terms of the subcontract in accordance with the plain and ordinary sense of the terms employed, Suffolk Construc. Co. v. Lanco Scaffolding Co., 47 Mass. App. Ct. 726, 729 (1999); Edwin R. Sage Co. v. Foley, 12 Mass. App. Ct. 20, 28 (1981), it is clear that the alleged “extra” work was actually work required by the subcontract *21 Gentile’s president admitted in trial testimony that Gentile was responsible for all work specified in Painting Section 09900. Part 2 A (“Execution”) of Section 09900 states:
It is the intent of these specifications that all exposed new and existing surfaces of the Work, including existing woodwork within the work area, shall be painted under this Section [emphasis supplied].
Gentile’s president conceded at trial that all of the painting done by the plaintiff, including what Gentile claimed was “extra” work, was on “exposed new and existing surfaces of the Work” as required by the subcontract. Further, Part l.B (‘Work to be Performed”) of Section 09900 specifically states that Gentile was required to:
1. Furnish all materials, equipment, labor and services required to do all painting and high performance coating work required under the Contract, as indicated on Drawings as specified herein, or both.
3. Paint all materials except factory-finished items and other items indicated to be left unpainted.
The door jambs, kickplates, and thresholds which Gentile claims it was not required to paint were neither “factory-finished” items, nor items which were to be left unpainted and were thus not items excepted from the subcontract’s requirement for the painting of all exposed surfaces. The disputed items were in fact specifically identified and shown on Drawing A-2 as items which required painting. Gentile has not pointed to any part of the painting subcontract which excluded Drawing A-2 specifications from the painting subcontractor’s responsibilities, or which limited Gentile’s work to the painting requirements of Drawing A-3, as Gentile contends. On the contrary, Part l.B of Section 09900 includes as subcontract work all painting required on “Drawings”.in the plural and can be reasonably interpreted only as obligating Gentile to complete the work specified on both Drawings A-2 and A-3. Finally, Part 1.A (“General Requirements”) of Section 09900 expressly incorporated “applicable parts of Division 1 as part of this Section.” Division 1 (“General Scope of the Work”) specifically identifies door jambs, thresholds and kickplates as items to be painted following deleading.
As the disputed work was painting work required by the subcontract and not “extra” work as claimed by Gentile, Gentile was precluded from recovering any additional monies beyond the subcontract price already paid by Aulson. See, e.g., New England Insulation Co. v. Beacon Const. Co. of Mass., Inc., 342 Mass. 407, 411 (1961); Russo v. Charles I. Hosmer, Inc., 312 Mass. 231, 234-235 (1942); Meegan v. Hall, 241 Mass. 449, 451-452 (1922). The trial court’s judgment for Gentile was error.[5]
*22 2. The judgment against Firemen’s must also be vacated. As noted, the Superior Court approved the parties’ stipulation dismissing the bond claim and thus effectively excused Firemen’s from this litigation. The entry of judgment against Firemen’s was an obvious clerical error.
Accordingly, the trial court’s judgment for the plaintiff is reversed and vacated. Judgment is to be entered for both defendants.
So ordered.

 Pursuant to Article 8.7.1 of the general contract, “any claim or dispute” by the contractor or subcontractor “of any nature arising under this Contract” had to be submitted by the contractor or subcontractor to the Architect for resolution. Despite its voluntary submission of the dispute to LTS, Gentile claims that LTS was not the Project Architect and that the Project Manual identified D.F. Yalente as the Architect and LTS as Owner’s Representative Consultant. Aulson argues that LTS was in fact the acting Architect throughout the project work and prepared the bid documents. Yalente testified at trial that he was not the Architect, and that he was hired by LTS, and served solely as a consultant to LTS. In allowing Aulson’s motion to strike Valente’s testimony on the grounds that he was not authorized to render any opinion on the proper interpretation of the contract documents, the trial judge recognized that Valente was not the Project Architect.

 Pursuant to Section 8.7.2 of the general contract, the Architect’s written decision was final unless appealed within twenty-one days. Gentile did not appeal the decision of LTS within the prescribed time period.

 Despite the trial court’s use of the term, Gentile’s complaint did not set forth a claim for recovery in quantum meruit. The sole question presented at trial and on this appeal was whether the disputed work was work actually required by the subcontract or “extra work” completed in addition to subcontract requirements at the direction of Aulson and the Project Architect.

 The determination that the alleged “extra” work was in fact work required by Gentile’s subcontract renders unnecessary any lengthy discussion of Gentile’s failure to comply with contract requirements governing claims for extra work. We note briefly that the record indicates that Gentile failed to maintain “accurate records of the nature and extent of the disputed Work and of the time spent and equipment used on the disputed Work” and to have such records verified daily by the Project manager as required by Article 8.7.3 of the general contract. Article 8.7.3 unequivocally states that “[failure of the Contractor to maintain such records shall cause the Contractor to forfeit its claim to additional compensation for such disputed work.” See Lawrence-Lynch Corp. v. Department of Environmental Mgm, supra at 684-685; State Line Contractors, Inc. v. Commonwealth, 356 Mass. 306, 318-319 (1969). Aulson’s knowledge that Gentile proceeded with the work under protest would not alone have excused Gentile from complying with the records requirements of Article 8.7.3. See Sutton Corp. v. Metropolitan Dist. Comm’n, 38 Mass. App. Ct. 764, 768 (1995).