Bristol Wholesale Groc. Co. Inc. *v.* Municipal Ltg. Plant Commn. of Taunton.

because it is not in the required form, as where, because oral, it is obnoxious to the statute of frauds or the parol evidence rule; it does not cover a contract unenforceable, as here, because essential terms are missing. Until all the essential terms are settled, it cannot reasonably be said that there is a meaningful intention which can be misrepresented.

*Orders sustaining demurrers affirmed.*

---

BRISTOL WHOLESALE GROCERY CO., INC. *vs.* MUNICIPAL LIGHTING PLANT COMMISSION OF TAUNTON.

Bristol.    April 7, 1964. — June 23, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Negligence,* Steam pipe, Res ipsa loquitur.    *Agency,* Admission by agent, Scope of authority.    *Evidence,* Admissions and confessions.

The manager of a municipal lighting plant generating and selling steam had no authority by virtue of his position to bind the plant by a statement that an explosion in a steam meter in premises of a customer, resulting in damage to goods on the premises, was the "fault" of the plant and that the customer would "be taken care of."    [671–672]

Evidence of the circumstances in which a steam generating plant supplied live steam to a warehouse through street pipes under the control of the plant and a feeder pipe, not under the plant's control, located on the warehouse premises and leading to a steam meter in the warehouse, and an explosion in the meter resulting in damage to goods in the warehouse occurred through excessive condensation either in the street pipes in a manhole there or in the feeder pipe, did not warrant a finding that the condensation was due to negligence of the plant; nor was the doctrine of res ipsa loquitur applicable.    [672–673]

TORT.    Writ in the Superior Court dated February 11, 1961.

There was a verdict for the plaintiff at the trial before *Rose,* J., and the defendant alleged exceptions.

*Philip M. Cronin* for the defendant.

*Talbot T. Tweedy* for the plaintiff.

SPALDING, J.   A summary of the evidence in this action of tort is as follows: The plaintiff operated a warehouse at 285 West Water Street in Taunton which is used for storage of groceries.   To heat this building (No. 2) and another (No. 1) near by the plaintiff purchased live steam during the winter months from the defendant, whose plant is located on West Water Street about 1,000 feet away.   This steam leaves the defendant's plant and runs northerly underground in an 8 inch main to a manhole opposite the plaintiff's premises.   In the manhole is an 8 inch trap with a gate valve and nipple which is connected to a pipe $3\frac{1}{2}$ feet underground leading westerly to the southeast corner of building No. 2 (building).   The pipe comes out of the ground with an 8 inch elbow and is reduced to a 2 inch pipe which goes up to the side of the building and into it.   This pipe was visible to anyone who entered the plaintiff's building from West Water Street.   A shuntflow meter to measure the steam consumed is affixed to the 2 inch pipe inside the building about 15 feet from the southerly wall, facing a door on the easterly side.   The steam was the property of the defendant until it passed through the meter.   Since 1946, the plaintiff has owned the feeder pipe from the point where it enters its property.   Between the place where the pipe enters the plaintiff's property and where it enters the building, the defendant "does not have any easements to gain access to . . . [the] pipe."   The defendant "does not have any documents or contracts or the like with . . . [the plaintiff] that requires . . . [the plaintiff] to notify . . . [the defendant] of any repairs that . . . [the plaintiff] proposed to undertake . . . [on] that pipe."   The defendant's interest in any repairs is in supervision (when notified) which consists of checking the insulation to prevent unmetered heat losses.   If the plaintiff makes repairs they must be done according to the defendant's specifications.   The defendant owns the meter and during the time that steam was supplied the defendant's employees checked it weekly.

The manhole opposite the plaintiff's premises has two covers, each of which has two holes "7/16 of an inch in

size.'' Water entering the manhole through these holes would, upon contact with the exposed steam pipes, cause condensation inside the pipes. Condensation in exposed pipes takes place when a cooling element such as water is introduced from the outside. There is a trap in the manhole attached to the 8 inch pipe running from the defendant's plant which is designed to carry off any condensation in either the steam line or the feeder line. The trap could be expected to operate properly under the conditions existing on February 14, 1960; it had a capacity to remove far more condensation (3,000–4,000 pounds an hour) than the amount expected (1–2 pounds an hour). Rain and surface water drain from a building next to the manhole and run over the manhole covers to a storm drain.

There are 116 inches of uninsulated pipe in the manhole, consisting of expansion joints, nipple and valve area. Only employees of the defendant have access to the manhole. The feeder pipe, which goes under West Water Street to the plaintiff's premises, is encased in a concrete monolithic envelope. The pressure of the steam in the feeder pipe is 200 pounds a square inch. The heat of the steam in the pipe is between 420° and 440° Fahrenheit. The insulation, for a distance as far as one can see, has disappeared. It is considered uneconomical to replace the insulation as the loss of heat would amount to only $35 a year. The original specifications under which the pipes were installed in 1936 called for insulation on all of the pipes, including the feeder pipe. This insulation was to be ''waterproof as nearly as practicable.''

On February 14, 1960, a Sunday, at about 1:15 A.M., a storm commenced with a light fall of snow which changed to rain at 5 A.M.; the rain continued until about 10:20 A.M. The total precipitation was 8/10 of an inch. About 10:07 A.M. a 5 inch piece of the shuntflow meter blew out and steam began to escape inside the plaintiff's building.

At 10:15 A.M. a fire alarm was sounded and the firefighters, upon arrival, heard the sound of steam escaping through the small aperture in the meter. The defendant was noti-

fied by the fire department. Following an unsuccessful attempt by a steamfitter to turn off the steam around 10:30 A.M., the defendant shut down the main around 11:15 A.M. In the meantime, the escaping steam had activated the sprinkler system in the plaintiff's building. The combination of the escaping steam and water damaged merchandise in the plaintiff's building.

The jury returned a verdict for the plaintiff. The defendant brings the case here on exceptions (1) to a ruling on evidence, (2) to the denial of its motion for a directed verdict, and (3) to portions of the charge.

This bill of exceptions calls for our emphatic disapproval. It is extremely prolix, containing much that is redundant and immaterial, and places a heavy and unnecessary burden on this court. It falls far short of meeting the statutory requirement that the "exceptions shall be reduced to writing in a summary manner." G. L. c. 231, § 113. "This requirement," we said recently, "is something more than a pious wish and if it is not complied with the judge has not only the power but the *duty* to disallow the bill" (emphasis supplied). *Western Union Tel. Co.* v. *Fitchburg Gas & Elec. Light Co.* 334 Mass. 587, 593. See *Romana* v. *Boston Elev. Ry.* 218 Mass. 76, 81.

1. The ruling on evidence challenged by the defendant arose in these circumstances. One Polinsky, the plaintiff's treasurer, was allowed to testify, subject to the defendant's exception, that shortly after the explosion he had a conversation with one Oliver, the defendant's manager, in which Oliver said, "Don't worry about it. . . . It's our fault. . . . You will be taken care of." The defendant argues that Oliver was not authorized to make an admission of this sort. We agree. There was no evidence that he had any actual authority to make such an admission. See *Barrett* v. *Wood Realty Inc.* 334 Mass. 370, 374; Restatement 2d: Agency, § 286. The mere fact that he was the manager of the defendant's plant does not of itself give him authority to admit liability. *Gilmore* v. *Mittineague Paper Co.* 169 Mass. 471, 476. *Parsons* v. *Dwightstate Co.* 301

Mass. 324, 327, and cases cited. And there is nothing in the special statutes relating to the defendant which can be construed as conferring such authority. See G. L. c. 164, §§ 55 and 56, and Sp. St. 1919, c. 150; *Commonwealth* v. *Oliver,* 342 Mass. 82, 84–85. It was prejudicial error to admit Oliver's statement, and the defendant's exception must be sustained.

2.   Turning to the defendant's exception to the denial of its motion for a directed verdict, we are of opinion that, with Oliver's admission out of the case, there was not sufficient evidence on which a jury could find the defendant negligent. The case appears to have been tried on the theory that excessive condensation in the pipes caused the explosion of the meter. And the plaintiff urges that this condensation was the result of the defendant's negligence in failing to keep the pipes insulated. The condensation could have occurred either in the manhole or in the feeder pipe owned by the plaintiff. There is evidence that at the time the pipes were installed in 1936 the defendant in its contract for the laying of the pipes had specified that they be insulated and waterproofed. The plaintiff relies on these specifications as creating a standard of reasonable care to be maintained with respect to the pipes thereafter. Since the insulation originally specified was allowed to disappear, so runs the argument, this could be found to constitute negligence on the part of the defendant. We disagree. The defendant's contract with a third person did not heighten or vary the duty owed by it to the plaintiff. *Hampson* v. *Larkin,* 318 Mass. 716. Compare *Kushner* v. *Dravo Corp.* 339 Mass. 273 (contract imposing a standard of safety). Moreover, there is no evidence that the lack of insulation would be dangerous in any way. There was evidence, to be sure, that much of the insulation had worn off and that that would allow some increase in condensation. However, there was also evidence that a runoff trap was more than adequate to handle all the reasonably foreseeable condensation. The failure to replace the insulation in these circumstances cannot be found to be negligent.

There was evidence of a crack in the cement sheathing

around the feeder pipe next to the plaintiff's building in 1962. But there was no evidence that the crack existed in 1960. It appeared that on the day of the accident there were unusually high tides, heavy rains, and a backup of water on the plaintiff's property which might have poured into any crack in the cement in great quantity. And there was evidence that this might cause condensation which could exceed the capacity of the trap and result in an explosion. But without resort to conjecture there was no basis for a finding that a crack existed in the sheathing in 1960. Nor was there any basis for a finding that if there was such a crack the defendant had any duty to inspect and repair it. *Oakland* v. *Pacific Gas & Elec. Co.* 47 Cal. App. (2d) 444, 447. See *A. DaPrato Co.* v. *Boston,* 334 Mass. 186, 188.

The plaintiff also invokes the doctrine of res ipsa loquitur. But this principle is not applicable in the circumstances. The feeder pipe and the concrete envelope in which it was encased were not under the control of the defendant. For aught that appears condensation could have occurred in the feeder pipe rather than in the pipes under the defendant's control. Thus, we have a situation where some of the instrumentalities which might have caused the accident were not under the defendant's control. In these circumstances an inference of negligence on the part of the defendant, from the mere fact of the explosion, was not warranted. *Wilson* v. *Colonial Air Transp. Inc.* 278 Mass. 420, 425. *Roscigno* v. *Colonial Beacon Oil Co.* 294 Mass. 234. *Knych* v. *Trustees of New York, N. H. & H. R.R.* 320 Mass. 339, 343. *Evangelio* v. *Metropolitan Bottling Co. Inc.* 339 Mass. 177, 183. It was error to deny the defendant's motion for a directed verdict.

3. In view of this determination, it is not necessary to consider the defendant's exception to the charge.

*Exceptions sustained.*
*Judgment for the defendant.*