ST. GERMAIN & SON, INC. *vs.* TAUNTON REDEVELOPMENT AUTHORITY.

Bristol.    November 14, 1975. — January 29, 1976.

Present: HALE, C.J., ROSE, & KEVILLE, JJ.

*Contract,* Construction, Building contract, Performance and breach.

A provision in a contract between a contractor and a city's redevelopment authority which, although entitled "Limit of the Authority's Liability," merely granted the contractor an extension of time for completing its performance if it was prevented from performing within the specified time due to a delay by the authority did not relieve the authority of liability for damages caused by such a delay. [48-50]

In an action by a contractor against a city's redevelopment authority to recover damages caused by the authority's delay in releasing buildings for demolition, the judge erred in refusing to direct a verdict for the authority where there was no provision in the contract which required the authority to release the buildings within any specified time. [50-52]

Evidence in an action by a contractor against a city's redevelopment authority to recover damages caused by the authority's delay in releasing buildings for demolition warranted a finding that the conduct of the authority with respect to its contractual obligations was not arbitrary or capricious. [52-53]

In a contract action, the plaintiff was not prejudiced by the exclusion of testimony of a representative of the defendant where the testimony would not have affected the outcome of the case. [53-54]

CONTRACT. Writ in the Superior Court dated April 19, 1973.

The action was tried before *Mitchell, J.*

*Marc E. Antine* for the plaintiff.

St. Germain & Son, Inc. *v.* Taunton Redevelopment Authority.

*Leonard Louison* (*Philipp G. Grefe* with him) for the defendant.

HALE, C.J. The plaintiff, St. Germain & Son, Inc. (contractor), brought an action of contract against the defendant, Taunton Redevelopment Authority (Authority). The plaintiff's declaration contained three counts labeled (1) breach of contract, (2) quantum meruit, and (3) action on a written contract, respectively.[1] The action was tried before a jury in the Superior Court, and the jury returned a verdict in the sum of $20,000 on count 3. The contractor appealed after verdicts were returned by the jury on counts 1 and 2 by direction of the court; the Authority cross appealed after a jury verdict on count 3, contending that its motion for a directed verdict was improperly denied.[2]

The plaintiff is a Massachusetts corporation engaged in the general contracting and demolition business in the city of Taunton. The Authority is a public body created under the laws of the Commonwealth to promote urban redevelopment. The contractor entered into a written agreement with the Authority for the demolition of various structures in Taunton for a total price of $56,560. The contract, which was prepared by the Authority, required that the contractor complete its work by January 31, 1969. There were provisions in the contract specifying liquidated dam-

[1] In count 1 the contractor alleges that the Authority acted arbitrarily and capriciously in failing to authorize the contractor to clear all the parcels within the time allowed by the contract. The contractor contends that such failure constitutes a breach of contract and asks for damages. Count 2 makes similar allegations but asks instead for the reasonable value of the services performed by the contractor. Count 3 also makes similar allegations but asks for damages equal to the "difference between the contract price as should have been upwardly revised and the contract price which the defendant, Taunton Redevelopment Authority, refused to upwardly revise."

[2] The plaintiff filed a bill of exceptions on April 30, 1974. Since it was presented but not allowed by July 1, 1974, it will be treated as a timely notice of appeal. Mass.R.Civ.P. 1A (7), 365 Mass. 732 (1974). See also Mass.R.Civ.P. 1A (10), 365 Mass. 733 (1974). In any event, the plaintiff and defendant subsequently filed timely notices of appeal.

ages of $50 for each day of delay by the contractor and allowing for extensions of time for delays caused by the Authority.

The contract specified that the contractor should not demolish any structure until it had received written notice to proceed. From time to time, the Authority gave such notice with respect to various buildings, and the contractor demolished them as agreed. However, not all the work was completed by January 31, 1969, due to the failure of the Authority to release various structures. The Authority had been delayed by difficulties in acquiring possession of some of the property and problems concerning relocation of certain tenants. There was evidence introduced to show that, at the time of the execution of the contract, the Authority did not own all of the buildings covered by the contract. Most of the remaining work was performed in 1969, but not all of it was completed until May, 1972.

On November 3, 1970, the plaintiff wrote to the Authority pursuant to the contract, seeking an upward revision in the contract price to reflect increases in labor and equipment costs. The testimony is in dispute as to the type of response by the Authority (the contract calls for a written reply), but it is clear that no increase was granted to the plaintiff. In order to recover the cost increases occasioned by the delay, the plaintiff entered the instant action on June 4, 1973.

1. In the absence of a specific contract provision to the contrary, a party to a contract may recover damages caused by delay in the commencement or completion of performance if it can be shown that the delay was a breach of that contract. *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495, 499-500 (1939). *Wes-Julian Constr. Corp.* v. *Commonwealth*, 351 Mass. 588, 594 (1967). However, if the contract contains a provision relieving the Authority of liability, it will be enforced, and actions for damages will be precluded. *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. at 504. We are faced with the question whether the contract contains a provision which relieves the Authority from liability for delay.

The Authority argues that section 402[3] of the contract expressly limits the Authority's liability for delays to the obligation of granting appropriate extensions to the contractor. Section 402 is entitled "Time of Completion," and subparagraph "a" bears the title "Limit of the Authority's Liability." However, we find nothing in the text of this subparagraph which would bar the present action. The text simply states that the contractor shall be granted an extension of time if it is prevented from performing within the specified time due to failure of the Authority to release a building for demolition. Nowhere is it stated that the contractor is denied the right to recover for damages caused by delay. The text and not the title is controlling. A title may be considered when construing the text, but the scope of the text cannot be expanded by the title. *Charles I. Hosmer, Inc.* v. *Commonwealth,* 302 Mass. at 501.

A contract is to be construed to give reasonable meaning to each of its provisions. *McMahon* v. *Monarch Life Ins. Co.* 345 Mass. 261, 264 (1962). Section 402 need not be construed so as to exculpate the Authority from all liability due to delay. Section 402 is given its clearest and most reasonable meaning when it is construed so as to grant extensions to the contractor for delays caused by the Authority. Its purpose is to prevent the application of the liquidated damages provision of the contract against the contractor when the delay is caused by the Authority itself.

The agreement in question is a lengthy, complicated one containing numerous detailed provisions. A clause depriving the contractor of a claim for damages arising out of delay would be of extreme importance to both the contractor and the Authority. It it had been the intention of the parties to preclude such a claim, the contract could have

[3] "a. Limit of the Authority's Liability
"The Contractor shall be entitled to an appropriate extension of time if the Authority fails to release any building or structure within such time as to enable the Contractor to perform the Contract within the specified time."

specifically stated such a prohibition. This court will not read such a provision into an already detailed contract.

There have been numerous cases which have upheld contract provisions depriving the contractor of a claim for damages arising out of delay. See *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495 (1939); *Coleman Bros. Corp.* v. *Commonwealth*, 307 Mass. 205 (1940); *Charles T. Main, Inc.* v. *Massachusetts Turnpike Authy.* 347 Mass. 154 (1964); *Wes-Julian Constr. Corp.* v. *Commonwealth*, 351 Mass. 588 (1967). It should be noted that the contracts in those cases both gave the contractor the right to extensions in cases of delay and specifically prohibited claims for damages caused by delay. For example, the contract in the *Wes-Julian* case provided in part "[the contractor] shall have no claim for damages on account of such delay, but shall be entitled to an equivalent extension of time in which to complete ... the work ...." 351 Mass. at 594. Because the contract in the instant case does not specifically preclude such actions for damages, the present action is not barred by the contract.

2. The Authority excepted to the denial of its motion for a directed verdict on count 3 (action on a written contract). Since we have determined that the present action is not barred by the terms of the contract, we must now decide whether there was any provision of the contract under which the contractor could recover on count 3.

The contractor's claim for recovery of increased costs due to delay is based on sections 107 and 108 of the contract which are set forth in relevant part in the margin.[4]

---

[4] "107. Changes in the Work

"a. The Authority may make changes in the scope of the work required to be performed by the Contractor by making additions thereto, or by omitting work therefrom, without invalidating the Contract, and without relieving or releasing the Contractor from any of his obligations under the Contract or any guarantee given by him pursuant to the Contract provisions, and without affecting the validity of the guaranty bonds, and without relieving or releasing the surety or sureties of said bonds provided that the total net amount of the changes does not change the contract amount by more than 25%. All such work shall

St. Germain & Son, Inc. *v.* Taunton Redevelopment Authority.

Those two sections provide contractual means which could allow the contractor to recover increased costs, but those two provisions are limited in scope. Section 107 applies only when there are "changes in the scope of the work required." Section 108 specifically refers to increased costs caused by "any instructions by drawings or otherwise." In the instant case the evidence discloses no "changes in the scope of the work" or extra costs due to "any instructions by drawings or otherwise." Therefore neither section 107 nor section 108 is of any aid to the contractor.

The language of the contract is clear and unambiguous. Where there is no ambiguity in the contract, its interpretation is a question of law for the judge (*Lewis* v. *Commonwealth*, 332 Mass. 4, 6 [1954]; *Quintin Vespa Co. Inc.* v. *Construction Serv. Co.* 343 Mass. 547, 551 [1962]), and we on appeal are not bound by the trial judge's conclusion unless the problem of interpretation is affected by findings of fact. *Robert Indus. Inc.* v. *Spence*, 362 Mass. 751, 755 (1973). Restatement 2d: Contracts (Tent. draft No. 5, 1970), § 238. The trial judge made no findings of fact relevant to this issue. Therefore, we are in as good a position to interpret the contract as he was.

There is no provision in the contract which requires the

---

be executed under the terms of the original Contract unless it is expressly provided otherwise.

"108. Claims for Extra Cost

"a. If the Contractor claims that any instructions by Drawings or otherwise involve extra cost or extension of time, he shall, within ten days after the receipt of such instructions, and in any event before proceeding to execute the work, submit his protest thereto in writing to the Authority stating clearly and in detail the basis of his objections. No such claim will be considered unless so made.

"b. Any discrepancies which may be discovered between actual conditions and those represented by the Drawings shall at once be reported to the Authority and work shall not proceed, except at the Contractor's risk, until written instructions have been received by him from the Authority.

"c. If, on the basis of the available evidence, the Authority determines that an adjustment of the Contract Price or time is justifiable, the procedure shall then be as provided for in Section "Changes in the Work" under GENERAL CONDITIONS, PART I."

Authority to release buildings for demolition within any specified time. Although we have concluded that the contract contains no express bar to a claim for damages arising out of delay, to recover the contractor still must show that there has been a breach of contract. Viewing the evidence in the light most favorable to the contractor, no such breach is disclosed. Therefore, the trial judge erred in refusing to direct a verdict in favor of the Authority on count 3.

3. Next we consider the contractor's contention that the evidence demonstrated arbitrary and capricious conduct by the Authority as to its contractual obligations, hence directed verdicts on counts 1 (breach of contract) and count 2 (quantum meruit) were improper. The contractor relies principally on *Farina Bros. Co. Inc.* v. *Commonwealth,* 357 Mass. 131 (1970).

In *Farina Brothers* a contractor sued for breach of contract due to a very lengthy delay in performance caused by the Commonwealth. The evidence showed that the Commonwealth refused to grant the contractor extensions of time to allow it to stop or reschedule work during the time when the job had been delayed. The Commonwealth threatened to bring in the contractor's bonding company if the contractor left the job site. The auditor and the trial judge termed this action arbitrary and capricious. The court then decided that "[t]he trial judge correctly concluded 'that the refusal of the Commonwealth to grant an extension of time or reschedule the work when the railroad did not relocate its tracks within the time contemplated is a breach by the Commonwealth of the contract terms entitling the . . . [contractor] to damages.'" 357 Mass. at 139.

The present case is far different from *Farina Brothers.* In that case the Commonwealth effectively prevented the contractors from taking other work. However, the evidence in the present case indicates at most that a representative of the Authority was upset when the demolition of a particular structure was delayed one week because the contractor had taken an out of town job. Secondly, the present action deals with damages allegedly caused by the

delay itself. But *Farina Brothers* dealt not with damages caused by the delay itself but rather with "damages caused the contractor by failure to grant seasonable extensions for performance made necessary by delay and failure of the Commonwealth to assist the contractor properly in rescheduling work." *Id.* at 140. Finally, in *Farina Brothers* the contractor was insulted, rebuffed, and received little or no cooperation from the agents of the Commonwealth. Such cavalier treatment of the contractor is absent from the present case.

In reviewing the record we find that there was no evidence that the Authority (1) executed a contract which it knew it could not perform, (2) engaged in a deliberate scheme of deception causing the contractor to enter into an unfair contract, or (3) would not permit the contractor to take other jobs. The evidence of the Authority's actions, even when viewed in the light most favorable to the contractor (see *McLaughlin* v. *Bernstein,* 356 Mass. at 224), does not rise to the level of arbitrary and capricious conduct. The trial judge did not err in directing verdicts on counts 1 and 2.

4. Finally, the contractor contends that it was error to exclude the testimony of Manuel Amaral, an Authority representative, as to what his supervisor had told him about the demolition contract with the contractor. The contractor argues that such testimony is admissible under the admissions exception to the hearsay rule. See *Rosenston* v. *Bickford Shoes, Inc.* 340 Mass. 769, 772-773 (1960); Restatement 2d: Agency, § 286. But see *Bristol Wholesale Grocery Co. Inc.* v. *Municipal Lighting Plant Commn. of Taunton,* 347 Mass. 668, 671-672 (1964). We need not decide that question for if it were error to exclude such testimony, it was harmless. The contractor, in its offer of proof, stated that "the witness would testify that he asked Mr. Carney [his supervisor] why certain dwellings and buildings were included in this contract when the Authority did not own them or have possession of them, and that Mr. Carney told the witness it was to save money, do it all in one job." Even if this testimony had been admitted, it

would not have affected the outcome of the case, for it did not tend to show arbitrary or capricious conduct on the part of the Authority. It would simply have demonstrated the Authority's view that it is less expensive to have one contractor demolish all the buildings in question than to have separate contractors demolish individual buildings. Since no substantial right of the contractor was affected by the exclusion of this evidence, the judgment below should not be disturbed. G. L. c. 231, §§ 119, 132. *Saeli* v. *Mangino*, 353 Mass. 591, 593 (1968).

Judgments are to be entered on the directed verdicts on counts 1 and 2. The verdict returned on count 3 is set aside. Judgment is to be entered for the defendant on count 3.

*So ordered.*