WORCESTER AIR CONDITIONING COMPANY, INC. vs.
COMMERCIAL UNION INSURANCE COMPANY.

Suffolk.  May 14, 1982. — August 31, 1982.

Present: ARMSTRONG, ROSE, & GREANEY, JJ.

*Public Works*, Statutory bond.  *Contract*, Building contract, Waiver,
Bond.

In a suit by a sub-subcontractor to recover under G. L. c. 149, § 29, for
labor and materials upon a statutory payment bond executed by the
defendant, a surety company, the notice of claim given by the plaintiff
to the general contractor on November 25, 1977, was not rendered
premature by the plaintiff's performing work on January 18, 1978,
which he was not obligated to perform, where the plaintiff had fully
performed its work under the contract as of November 8, 1977. [354-356]
In a suit by a sub-subcontractor to recover under G. L. c. 149, § 29, for
labor and materials upon a statutory payment bond executed by the
defendant, a surety company, the judge's finding that the plaintiff's
notice of claim, which identified the amount of the claim and the
name of the party with whom it had subcontracted, met the require-
ments of the statute, was neither clearly erroneous nor inconsistent
with the relevant legal standards.  [356-357]
In a suit by a sub-subcontractor to recover under G. L. c. 149, § 29, for
labor and materials upon a statutory payment bond executed by the
defendant, a surety company, a finding by the judge that it was the
practice of the subcontractor and the plaintiff to proceed without a
written change order where something had to be done quickly war-
ranted a conclusion that the requirement of a written change order
had been waived and that, therefore, extra work done at the request of
the subcontractor came within the protective scope of the bond.  [357]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 6, 1978.

The case was heard by *McCann*, J., a District Court judge
sitting under statutory authority.

*Charles M. Burnim (John J. Jennings* with him) for the
defendant.

14 Mass. App. Ct. 352                                353

Worcester Air Conditioning Co., Inc. *v.* Commercial Union Ins. Co.

*Peter J. Gagne* for the plaintiff.

ROSE, J.  The plaintiff, a sub-subcontractor, commenced this suit to recover under G. L. c. 149, § 29, for labor and materials upon a statutory payment bond executed by the defendant, a surety company, in connection with the construction of a building. A judge, sitting without a jury, found that the plaintiff completed work pursuant to the basic written contract and also performed extra work orders within the protective scope of the payment bond. The court awarded the plaintiff $20,433, representing basic contract work and extra work orders, less back charges, plus interest, legal fees and cost of maintaining this action.  The defendant appeals, claiming that the plaintiff filed its statement prematurely, that the language of the statement sent to the general contractor was not adequate to serve as the required notice of claim, and that the extra work done was not work approved in accordance with G. L. c. 149, § 29 (as amended through St. 1972, c. 774, § 5).  We hold that the plaintiff complied with the statutory notice and statement of claim requirements of G. L. c. 149, § 29, and affirm the judgment of the lower court.

We summarize the judge's findings.  In doing so, we recognize the rule that "findings of fact made by the judge below are to be accepted by us unless clearly erroneous." *Perez v. Boston Housing Authy.*, 379 Mass. 703, 705 (1980). Mass. R.Civ.P. 52(a), 365 Mass. 816 (1974). On February 2, 1976, James J. Welch and Company (Welch) entered into a contract with the city of Lynn for the construction of a junior high school.  Welch, as principal, and the defendant, as surety, executed a statutory payment bond under G. L. c. 149, § 29.  On February 19, 1976, Welch entered into a subcontract with Stewart and Prince, Inc., for the heating, ventilation and air-conditioning portion of the work.  Subsequently, Stewart and Prince, Inc. (Stewart), entered into a sub-subcontract with the plaintiff for sheet metal work. The award and execution of both contracts were subject to the provisions of G. L. c. 149, §§ 44A (as in effect prior to St. 1977, c. 968) & 44B-44L (as in effect prior to St. 1980, c. 579, § 55).

At the request of the subcontractor, the plaintiff performed work not covered by the contract. The subcontractor and the plaintiff executed one written change order (which neither the general contractor nor the owner signed) and orally agreed on two more. The judge found that "[i]t was the practice of both Stewart [the subcontractor] and Worcester Air [the plaintiff] to proceed on extra work requests without the benefit of a written change order where things had to be done in a hurry." Furthermore, the clerk of the works, employed by the owner or the architect to oversee performance of the contract work, informed the plaintiff that, contrary to contract specifications, a ceiling would not be installed in the ticket booth area. Accordingly, the plaintiff placed duct registers in the room without regard to ceiling height.

On November 8, 1977, the plaintiff, having completed items on the punch list of September 13, 1977, left the job site, returning, however, for 1-¼ hours on January 18, 1978, at the request of the subcontractor, to correct a problem created when a ceiling was subsequently installed in the ticket booth area which necessitated a lowering of the duct registers earlier placed by the plaintiff. The plaintiff did not charge the subcontractor the cost of lowering the register (thirty-five dollars) because it did not want to jeopardize future payment: it had not received payment from the subcontractor since July 31, 1977, and, on November 25, 1977, had forwarded a letter to the general contractor claiming a balance due of $21,198 for labor and materials furnished pursuant to the sub-subcontract.

1. The defendant argues that the purported notice of claim was filed prematurely since it was dated November 25, 1977, while the plaintiff last performed work on January 18, 1978, when it lowered the duct register in one room. The defendant relies on a strict construction of the statutory provision that notice of claim be given to the general contractor "within sixty-five days after the day on which the claimant last performed." G. L. c. 149, § 29 (as appearing in St. 1972, c. 774, § 5). The plaintiff replies that the last day of per-

formance was November 8, 1977, since the work of January 18, 1978, was done gratuitously. The plaintiff also argues that even if it were obligated under the contract to lower the duct registers, the notice qualified because G. L. c. 149, § 29 (as amended through St. 1972, c. 774, § 4), read in conjunction with G. L. c. 30, § 39F, par. 1(b), as appearing in St. 1972, c. 774, § 2 (which states that the general contractor shall pay a subcontractor within sixty-five days after the latter "substantially completes" its work), refers to substantial performance rather than completed performance.[1]

We recognize that "the . . . [notice] of claim under a payment bond must be filed after, not before, . . . performance is complete." *International Heating & Air Conditioning Corp. v. Rich Constr. Co.*, 372 Mass. 134, 137 (1977). We need not decide, however, whether under G. L. c. 149, § 29, a claimant may file after he substantially performs the work. Rather, we hold that the plaintiff fully performed its work under the contract as of November 8, 1977; therefore, its notice of claim dated November 25, 1977, was not given prematurely.

---

[1] General Laws c. 149, § 29, as appearing in St. 1962, c. 696, stated that "[i]n order to obtain the benefit of [the] security the claimant shall file . . . a sworn statement of his claim within sixty days after the claimant ceases to perform labor." However, the amended G. L. c. 149, § 29, as appearing in St. 1972, c. 744, § 5, provides:

> "In order to obtain the benefit of [the] bond for any amount claimed due and unpaid at any time, any claimant having a contractual relationship with the [principal] contractor . . . who has not been paid in full for any amount claimed due . . . within sixty-five days after the due date for [the] same, shall have the right to enforce such claim (a) by filing . . . within one year after the day on which such claimant last performed the labor . . . included in the claim . . . .

> "Any claimant having a contractual relationship with a subcontractor [but not with the principal contractor] . . . shall have the right to enforce any such claim . . . only if [he] gives written notice to the contractor principal within sixty-five days after the day on which [he] last performed the labor . . . included in . . . [the bond's] coverage."

Specifically, we conclude that the plaintiff's installation of duct registers in the ticket booth area was completed, for purposes of the sub-subcontract, when, following instruction by the clerk of the works, it placed duct registers in the room without regard to ceiling height.[2] The plaintiff was not obligated under the sub-subcontract to lower the duct registers after the subsequent installation of a ceiling, and such work, performed without charge, must be classified as either "work done under a new and independent arrangement, made after the original contract or continuing employment has ended, or a gratuitous performance of work not contracted for." *Peerless Unit Ventilation Co.* v. *D'Amore Constr. Co.*, 283 Mass. 121, 125 (1933). Accordingly, the work performed on January 18, 1978, did not render the earlier notice of claim premature, for such notice followed the plaintiff's completion of all work required by the sub-subcontractor.[3]

2. The defendant also asserts that the plaintiff's letter of November 25, 1977, was an announcement rather than a notice of claim.[4] Under G. L. c. 149, § 29, the claimant must state "with substantial accuracy the amount claimed, the name of the party for whom such labor was performed

___

[2] The informality with which the clerk of the works notified the plaintiff that a ceiling would not be installed in the ticket booth area did not negate its effect on the plaintiff's responsibilities under the contract. See *J.P. Smith Co.* v. *Wexler Constr. Co.*, 353 Mass. 551, 555 (1968).

[3] We note that the facts of the instant case are distinguishable from those situations where: (1) a notice of claim is invalidated because work required under the contract, either to complete performance or repair prior work, is subsequently performed, see and compare *Mario Pandolf Co.* v. *Commonwealth*, 303 Mass. 251, 253-255 (1939); *International Business Machs. Corp.* v. *Quinn Bros. Elec.*, 321 Mass. 16, 19 (1947); or (2) the statutory period for filing a claim commences to run after such belated work is completed, see and compare *Peerless Unit Ventilation Co.* v. *D'Amore Constr. Co.*, 283 Mass. at 125; *Ross* v. *Planet Ins. Co.*, 361 Mass. 852, 853 (1972); *International Heating & Air Conditioning Corp.* v. *Rich Constr. Co.*, 372 Mass. at 137-138.

[4] The defendant focuses attention on the last paragraph of the letter, where the plaintiff states that "[w]e send this as a matter of policy on all jobs. It is not intended to be a reflection on anyone's ability or integrity."

or such labor, materials, equipment, appliances or transportation were furnished." In the letter, the plaintiff clearly identified the amount of the claim and the name of the party with whom it had subcontracted. The judge found that the letter "was sent for the purpose of qualifying the claim under G. L. c. 149, § 29." We cannot say the judge's ultimate finding that the claim of notice met the requirements of the statute "is either clearly erroneous or inconsistent with the relevant legal standards." *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976).

3. Finally, the defendant contends that the performance of extra work at the request of the subcontractor was not within the protective scope of the payment bond because contract documents required that change orders be in writing. However, as between the parties to the sub-subcontract, such a provision "obviously could not prevent oral contracts for extra work, for the parties had power to waive or alter that provision orally at any time." *M. L. Shalloo, Inc.* v. *Ricciardi & Sons Constr. Inc.*, 348 Mass. 682, 685 (1965), quoting from *Zarthar* v. *Saliba*, 282 Mass. 558, 560 (1933). *J. P. Smith Co.* v. *Wexler Constr. Co.*, 353 Mass. 551, 555 (1968). *General Elec. Co.* v. *Brady Elec. Co.*, 2 Mass. App. Ct. 522, 528 (1974). The judge's finding that it was the practice of the subcontractor and plaintiff to proceed without a written change order where something had to be done quickly justifies the conclusion that they impliedly waived the requirement of a written change order. The surety's argument that there was no finding that the contractor and owner varied the requirement does not affect the surety's liability on the bond to the plaintiff, because the extra work performed by it was "labor performed or furnished" in the construction of the building. See *J. P. Smith Co.* v. *Wexler Constr. Co.*, 353 Mass. at 555.

In sum, the judge was correct in concluding that the plaintiff complied with the statutory notice and statement of claim requirements of G. L. c. 149, § 29, and that the extra work done at the request of the subcontractor came within the protective scope of the surety bond.

*Judgment affirmed.*