FRED J. FINDLEN & others[1] *vs.* WINCHENDON HOUSING AUTHORITY. No. 89-P-112. May 3, 1990. *Contract,* Construction contract, Performance and breach, Modification, Waiver.

Although the construction contract between the Winchendon Housing Authority (Authority), as owner, and Fred J. Findlen & Sons (Findlen), as general contractor, contained a sweeping provision disclaiming any liability by the owner for job delays, Findlen obtained, on account of delay damages, a judgment for $29,056.82, the amount it paid in a separate action to one of its subcontractors, plus $2,500 in attorney's fees. We conclude that through a series of memoranda and letters the owner modified the scope of the original provision exculpating it from a duty to pay delay damages and we affirm the judgment.

What caused the delays in question is not disputed. Findlen was the successful bidder on a housing job for the Authority and entered into a contract on June 11, 1975. On the basis of prior unsatisfactory experience, Findlen rejected the low filed sub-bid for roofing. See par. (l) of G. L. c. 149, § 44I, inserted by St. 1956, c. 679, § 1.[2] Findlen proposed to substitute itself for the roofing work, a proposal to which the Authority agreed, subject to approval from the Department of Community Affairs (DCA). That concurrence was extremely long in coming. As the trial judge found, there were "months of procrastination." To be precise, there were seven months of wheel spinning before the Authority was able, on February 11, 1976, to award a subcontract for roofing to Findlen. The lack of cover for the buildings Findlen had been putting up (only the roof framing could be put in place) upset a variety of schedules, including that of the plumbing subcontractor, PDM Plumbing & Heating, Inc. (PDM), whose particular delay damages are the subject of this case. Those damages were determined in an action brought by PDM against Findlen.

[1]Robert F. Findlen, Fred P. Findlen, who are partners of Fred J. Findlen and do business with him under the partnership name Fred J. Findlen & Sons, and St. Paul Fire and Marine Insurance Company.

[2]The cognate provision, by reason of the enactment of St. 1980, c. 579, § 55, now appears in G. L. c. 149, § 44F(4)(*a*).

Among the general conditions of the construction contract was a paragraph which provided that, "Apart from extension of time for unavoidable delays, no payments or allowance of any kind shall be made to the Contractor as compensation for damages because of hindrance, or delays from any cause in the progress of the work whether such delay be avoidable or unavoidable." Absent a provision of that sort, a party to a contract may recover damages occasioned by delay if the delay stems from a breach of contract by the other contracting party. *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495, 499-500 (1939). *Wes-Julian Constr. Corp.* v. *Commonwealth*, 351 Mass. 588, 594 (1967). *St. Germain & Son* v. *Taunton Redevelopment Authy.*, 4 Mass. App. Ct. 46, 48 (1976). But a clause which exculpates the awarding authority from liability for damages arising out of delay is enforceable. *Charles I. Hosmer, Inc.* v. *Commonwealth, supra* at 502, 503. *Coleman Bros.* v. *Commonwealth*, 307 Mass. 205, 215-216 (1940). *Charles T. Main, Inc.* v. *Massachusetts Turnpike Authy.*, 347 Mass. 154, 162-163 (1964). *Wes-Julian Constr. Corp.* v. *Commonwealth, supra* at 595. *Worcester* v. *Granger Bros.*, 19 Mass. App. Ct. 379, 388 (1985). *Joseph E. Bennett Co.* v. *Commonwealth*, 21 Mass. App. Ct. 321, 329-330 (1985). *B.J. Harland Elec. Co.* v. *Granger Bros.*, 24 Mass. App. Ct. 506, 509 (1987). The general rule is subject to an exception if arbitrary and capricious conduct on the part of the awarding authority produces the delay and the authority declines even to extend the time for contract completion. See *Farina Bros.* v. *Commonwealth*, 357 Mass. 131, 138-139 (1970); *Acme Plastering Co.* v. *Boston Hous. Authy.*, 21 Mass. App. Ct. 669, 672 n. 3. (1986). In the instant case, the Authority did grant extensions to Findlen and struggled conscientiously — albeit ineffectively — to break the logjam with DCA. The Authority did not act arbitrarily or capriciously.

Indeed, the Authority commendably acknowledged the damage the delay had caused to Findlen and paid to Findlen $122,726 for "[e]xtra costs due to job delays." That act, as documented, and other papers, which we detail below, point to the resolution of the controversy. Parties to a written contract may, of course, alter it subsequently, by oral modification, by their joint conduct, or, ideally, by a writing subscribed to by the persons to be bound. See *M.L. Shalloo, Inc.* v. *Ricciardi & Sons Constr., Inc.*, 348 Mass. 682, 685-686 (1965); *A. Leo Nash Steel Corp.* v. *Southern N.E. Steel Erection Co.*, 9 Mass. App. Ct. 377, 383-384 (1980); *Worcester Air Conditioning Co.* v. *Commercial Union Ins. Co.*, 14 Mass. App. Ct. 352, 357 (1982). Words and actions of parties, such as statements in letters, may effect a waiver or modification of a provision in a contract. See *Gouzoulas* v. *F.W. Stock & Sons*, 223 Mass. 537, 539 (1916); *Martiniello* v. *Bamel*, 255 Mass. 25, 28 (1926).

In itself, the Authority's act of paying $122,726 on account of delay stands for a waiver, at least to that extent, of the "no delay damages" clause. Standing alone, however, one might hesitate to say that a single

waiver of that clause worked a comprehensive waiver. Here the documentation comes into play. On December 11, 1976, Findlen had by letter communicated to the Authority PDM's claim for additional compensation "because of the roofing delay." In a letter, dated April 13, 1977, from the Authority to DCA, the Authority requested DCA's acquiesence to pay $122,726 to Findlen, leaving for inclusion in "any final decisions" the delay claim of the plumbing subcontractor and the electrical subcontractor. In a letter from the Authority to DCA, dated August 31, 1977, the Authority acknowledged DCA's approval of a payment of $122,726 on account of delay and called attention that disposition of two subcontractor claims had yet to be made. Under date of September 16, 1977, there is Change Order No. 14, subscribed to by the project architect, the Authority, DCA, and Findlen. Change Order No. 14 incorporates by reference the letter of August 31, 1977, which reserved for decision two subcontractor claims. By Change Order No. 15, under date of July 10, 1978, subscribed to by the Authority, the architect, and Findlen, the Authority approved the electrical subcontractor's delay damages claim, and by implication left open the plumbing subcontractor's claim — which was in like category — because the earlier reservation of that claim was not negated by Change Order No. 15. Taken together, the action of the Authority in dealing with delay claims and the papers which indicate its intention so to do as regards the plumbing subcontractor's delay justify concluding there was a waiver of the "no delay damages" clause in this case.

Two other points raised by the Authority in its brief are susceptible of cursory disposition. The Authority protests that Findlen's claim for compensation is barred by Findlen's having failed to join the Authority as a necessary party in the earlier action between PDM and Findlen (in which the damages sustained by PDM because of the roofing delay were established). In so arguing, the Authority subjects itself to some embarrassment. The record discloses that, in fact, Findlen invited the Authority to intervene as a party in the PDM-Findlen suit, an invitation the Authority apparently declined, whereupon Findlen moved to implead the Authority. That motion was denied. Concerning the application to this case of G. L. c. 30, § 39O(*a*), it is sufficient to say that the plaintiff, Findlen, never made a claim under that statute. General Laws c. 30, § 39O, inserted by St. 1973, c. 1164, requires an awarding authority to adjust the contract price when it makes a written order "to suspend, delay, or interrupt all or any part of the work. . . ." No such order was ever made. We do not decide, because the question has not been presented, whether "no delay damages" clauses are valid in the light of the first paragraph of § 39O.

*Judgment affirmed.*

*John J. Spignesi* for the defendant.
*Brian G. Callahan* for the plaintiffs.