SUTTON CORPORATION *vs.* COMMONWEALTH. February 24, 1992. *Contract*, Public works, Performance and breach. *Public Works*, Delay.

The plaintiff, Sutton Corporation (Sutton), appeals from an entry of summary judgment in favor of the Commonwealth on Count I of Sutton's

complaint.[1] Sutton alleges that it is entitled to recover damages due to a violation of contract by the Commonwealth, acting through the Department of Public Works (department). The contract involves the reconstruction of a bridge in the town of Danvers. The alleged violation was the department's failure to have certain utility lines moved so that Sutton could perform its work. We affirm the judgment.

In support of its motion for summary judgment, the Commonwealth submitted an affidavit with an attached report and recommendation prepared for the board of contract appeals by a department hearing examiner. The Commonwealth also submitted an affidavit with an attached copy of the contract and "Division One of the Standard Specifications for Highways and Bridges," which was incorporated into that contract. The record on appeal, however, contains only portions of the contract. Sutton did not submit any materials to support its opposition to the Commonwealth's motion or its cross motion for summary judgment. Based on the hearing examiner's report submitted by the Commonwealth, we gather the following undisputed facts. The contract between Sutton and the Commonwealth was executed on March 21, 1980. It called for the removal of a bridge in Danvers and construction of a new bridge and roadway approaches. The contract contained a special provision which stated that "[g]as, telephone, and electric utilities will be relocated by their owners," and a requirement that "[i]mmediately after award of the contract, the Contractor shall confer with the owners of all utilities in order that relocations of mains and services may be made at times consistent with operations under this contract." The contract did not expressly require the department to perform any act to relocate the utility lines.

Sutton began work on April 30, 1980, but was unable to work on both sides of the bridge, as it had planned, because of utility wires that had not been relocated. The principal cause of Sutton's delay, as determined by the hearing examiner, was the failure of New England Telephone and Telegraph Company (NET) to move its telephone lines, although the Boston Gas Company and the Danvers Electric Company also caused delays. Beginning in the spring of 1981, Sutton's resident engineer made many attempts to get NET to relocate its lines. In September, after being notified by the resident engineer of his frustration with NET, the department wrote three letters to NET requesting immediate action. NET finally moved its lines on October 26, 1981. The length of the delay is disputed. The hearing examiner's report states, "I make no finding as to length of delay other than to say there was a significant delay and that the minimum delay was 87 days and the maximum delay was 104 days." Although the original date of completion provided by the contract was August 29,

---

[1]Sutton's complaint also contained two counts asserting violations of G. L. c. 93A, § 11 (1990 ed.). It is unclear from the record what happened to these counts, but they are not part of the appeal before us.

1981, it had to be extended several times, and work was not completed until July 14, 1982.

Sutton filed a claim with the department for damages of $44,605.18, to cover increased costs due to the utility relocation delays. This was ultimately denied by the hearing examiner in the report and recommendation dated July 1, 1986. Sutton commenced this action in Superior Court on May 23, 1985. Sutton's complaint asserts that it incurred damages as a result of delay and disruption because "[t]he [d]efendant, in breach of said contract, failed to provide the work for the [p]laintiff to proceed, in particular, failing to effectuate the removal of certain utilities impeding performance of the work."

The contract contains the standard "no damages for delay" provision in § 8.05, which provides in relevant part: "The Contractor hereby agrees that he shall have no claim for damages of any kind on account of any delay in commencement of the work or any delay or suspension of any portion thereof, except as hereinafter provided. Provided, however, that if the [Public Works] Commission in [its] judgment shall determine that the performance of all or any major portion of the work is suspended, delayed, or interrupted for an unreasonable period of time by an act of the Department in the administration of the Contract, or by the Department's failure to act as required by the Contract within the time specified in the Contract (or if no time is specified, within a reasonable time), and without the fault or negligence of the Contractor, an adjustment shall be made by the Department for any increase in the actual cost of performance of the Contract (excluding profit and overhead) necessarily caused by the period of such suspension, delay, or interruption. No adjustment shall be made if the performance by the Contractor would have been prevented by other causes even if the work had not been so suspended, delayed, or interrupted by the Department."

General Laws c. 30, § 39O (1990 ed.), requires the following provision to be inserted into public construction contracts such as this one: "(a) The awarding authority may order the general contractor in writing to suspend, delay, or interrupt all or any part of the work for such period of time as it may determine to be appropriate for the convenience of the awarding authority; provided however, that if there is a suspension, delay or interruption for fifteen days or more or due to a failure of the awarding authority to act within the time specified in this contract, the awarding authority shall make an adjustment in the contract price for any increase in the cost of performance of this contract but shall not include any profit to the general contractor on such increase; and provided further, that the awarding authority shall not make any adjustment in the contract price under this provision for any suspension, delay, interruption or failure to act to the extent that such is due to any cause for which this contract provides for an

equitable adjustment of the contract price under any other contract provisions."

Sutton argues that the second clause of c. 30, § 39O, should be read to provide an adjustment in the contract price for increased cost of performance any time there is a suspension, delay, or interruption for fifteen days or more, regardless of whether it was ordered or caused by the awarding authority or caused by a third party. As we have said in *Reynolds Bros.* v. *Commonwealth*, *ante* 1, 6 (1992), the second clause only takes effect when the first clause is satisfied by the awarding authority ordering the contractor in writing to suspend, delay, or interrupt the work. The department issued no written order in this case. Thus, c. 30, § 39O, does not provide any relief to the plaintiff.

Sutton's claim is precluded by the § 8.05 "no damages for delay" provision in the contract. As we said in *Reynolds Bros.* v. *Commonwealth*, *supra* at 7, § 8.05 specifically precludes damages for delays in the commencement or performance of work, unless the Public Works Commission (commission) in its discretion determines that an adjustment should be made for an unreasonable delay caused either by an action of the department in administering the contract or by the department's failure to act as required in the contract. Here, as in *Reynolds Bros.* v. *Commonwealth*, *supra* at 7, it is clear that the commission did not make the requisite determination. Therefore, the exception does not apply, and the claim based on delay is precluded.

*Judgment affirmed.*

*Harvey B. Heafitz* for the plaintiff.

*Brison S. Shipley*, Special Assistant Attorney General, for the Commonwealth.