BONACORSO CONSTRUCTION CORP. *vs.* COMMONWEALTH.

No. 94-P-681.

Suffolk. March 28, 1996. - August 1, 1996.

Present: PERRETTA, KASS, & JACOBS, JJ.

*Contract,* Public works, Performance and breach. *Public Works,* Delay.

Certain letters with respect to a bridge construction project exchanged be-
tween the contractor and the district highway engineer of the Depart-
ment of Public Works did not constitute a written order to delay work
as required by G. L. c. 30, § 39O, such as would entitle the contractor
to costs occasioned by delay in the project. [10-13]

This court declined to adopt a principle of "constructive suspension"
whereby a delay order could be inferred from the actions of a public
authority that cause delay in a public works project, where that would
be inconsistent with the mandate of G. L. c. 30, § 39O. [13]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 23, 1990.

The case was heard by *Elizabeth B. Donovan,* J.

*Carol A. McKenna* (*Donald P. Whalen* with her) for the
plaintiff.

*John E. Bowman, Jr.,* Assistant Attorney General, for the
Commonwealth.

KASS, J. Since the decisions in *Reynolds Bros., Inc.* v. *Com-
monwealth,* 412 Mass. 1, 6 (1992), and *Sutton Corp.* v. *Com-
monwealth,* 412 Mass. 1003, 1004-1006 (1992), it has been
understood that G. L. c. 30, § 39O,[1] requires a written order

---

[1]The text of the statute, as inserted by St. 1973, c. 1164, is as follows:
"Every contract subject to the provisions of section thirty-nine M of this
chapter or subject to section forty-four A of chapter one hundred forty-
nine shall contain the following provisions (*a*) and (*b*) in their entirety and,
in the event a suspension, delay, interruption or failure to act of the award-
ing authority increases the cost of performance to any subcontractor, that
subcontractor shall have the same rights against the general contractor for
payment for an increase in the cost of his performance as provisions (*a*)

to delay work on a public construction project as a condition of the right by a contractor to recover damages incident to delay in the project attributable to the awarding authority. The question that the contractor Bonacorso Construction Corp. (BCC) presents in this case is whether, in the absence of an express order to "suspend, delay, or interrupt" the work, other documents exchanged by the contractor and the awarding authority, in this case the Department of Public Works (DPW),[2] may by implication constitute orders for delay.[3]

BCC had entered into a contract with the DPW to reconstruct two bridges over Interstate Route 93 in Reading. Under the contract, construction was to commence March 17, 1987, and to conclude November 28, 1987. An "incentive/ disincentive" clause provided for a backcharge against BCC of $4,000 for each day after the completion date that BCC required to finish the job.

---

and (*b*) give the general contractor against the awarding authority, but nothing in provisions (*a*) and (*b*) shall in any way change, modify or alter any other rights which the general contractor or the subcontractor may have against each other.

"(*a*) The awarding authority may order the general contractor in writing to suspend, delay, or interrupt all or any part of the work for such period of time as it may determine to be appropriate for the convenience of the awarding authority; provided however, that if there is a suspension, delay or interruption for fifteen days or more or due to a failure of the awarding authority to act within the time specified in this contract, the awarding authority shall make an adjustment in the contract price for any increase in the cost of performance of this contract but shall not include any profit to the general contractor on such increase; and provided further, that the awarding authority shall not make any adjustment in the contract price under this provision for any suspension, delay, interruption or failure to act to the extent that such is due to any cause for which this contract provides for an equitable adjustment of the contract price under any other contract provisions.

"(*b*) The general contractor must submit the amount of a claim under provision (*a*) to the awarding authority in writing as soon as practicable after the end of the suspension, delay, interruption or failure to act and, in any event, not later than the date of final payment under this contract and, except for costs due to a suspension order, the awarding authority shall not approve any costs in the claim incurred more than twenty days before the general contractor notified the awarding authority in writing of the act or failure to act involved in the claim."

[2]Now the Department of Highways. See St. 1991, c. 552.

[3]BCC also asks us to depart from the reasoning and holding of *Reynolds Bros., Inc.* v. *Commonwealth, supra*; we decline that invitation.

During the course of the job, the contract completion date was greatly extended. Some of the additional time was attributable to redesign and adjustment of precast construction beams for one of the two bridges. Other delays stemmed from the cessation in road asphalt production with the onset of winter and from the need for additional safety barriers required by Federal inspectors. For those and other reasons, DPW and BCC amended their contract to provide a new completion date of December 6, 1988. The work does not appear to have been finished by that date because BCC ultimately lodged a claim against DPW for costs attributable to a 516-day delay. In the construction industry, a claim for adjustment in contract price in consequence of an imposed delay is called a "delay impact charge." BCC broke down the delay consequences into thirteen categories, of which the largest were labor rate escalation, supervision, idle equipment, home office overhead, and attorney's fees.[4] In dollars, the claim came to $1,193,886.67. A judge of the Superior Court, who heard the case without a jury, made findings of fact and determined that the DPW had issued no written order for delay and that BCC was not entitled to delay impact damages. We affirm the ensuing judgment.

We have examined the various documents to which BCC has directed our attention. They consist of letters from BCC to C.F. Mistretta, the district highway engineer who appears to have been in charge of the Reading bridges job for DPW District #4, letters of response by Mistretta, an internal letter from Mistretta to the chief engineer of the DPW, and a vote of the Public Works Commission extending the completion date for the bridges job. In analyzing the significance of those documents, it is necessary to take into account that the underlying contract incorporated the DPW's Standard Specifications for Highways and Bridges (1973) (the Blue Book). Section 8.05 of the Blue Book provided: "The Contractor hereby agrees that he shall have no claim for damages of any kind on account of any delay in commencement of the work

---

[4]We intimate no position whether the categories of claims would be recoverable as damages incident to delay if the preconditions for a delay impact claim are met.

or any delay or suspension of any portion thereof. . . ."[5] Section 460.63, paragraph thirteen, provided that, "The construction of bituminous concrete pavement shall terminate November 15 and shall not be resumed prior to April 1 except as determined and directed in writing by the Engineer depending upon the necessity and emergency of attendant conditions, weather conditions; and location of the project."

At minimum, we think that a document from the DPW must in some manner instruct — or confirm that the contractor has been instructed — to delay, suspend, or interrupt work for periods the authority determines, as the statute says, "to be appropriate for the convenience of the awarding authority." BCC first looks to support for its position in a letter dated December 7, 1987, from the district highway engineer to BCC. That letter: 1) acknowledges receipt of notice by BCC that it *proposes* to file a claim for delay impact; 2) confirms that the Public Works Commission has voted to delete the incentive-disincentive provision from the contract; and 3) reports that a condition of the deletion is that certain work proceed throughout the winter and that no bituminous concrete work be done until the next spring. The only passage in that letter that has about it the flavor of an instruction or order is the one that calls a halt to bituminous concrete work. That direction, however, is no more than repetition of what the contract had provided for in § 460.63, concerning curtailment of bituminous concrete work after November 15th and before April 1st. The December 7th letter, therefore, does not qualify as an instruction or order to delay.

There is even less hope for BCC in a letter from the district highway engineer to BCC dated the next day, December 8, 1987, acknowledging receipt of a letter from BCC about the status of shop drawings for sign supports. That letter has no attributes of an instruction or order. A letter dated February 11, 1988, from the district highway engineer to the chief engineer of the DPW, detailing certain delays and recommending allowances on BCC's behalf acknowledges some contributions to delay by the DPW (while denying some of the other claims), but the document is entirely internal to the

---

[5]A proviso clause in § 8.05 goes on to say that in certain instances in which the Public Works Commission determines that a delay is necessary, the DPW shall make an adjustment in the contract for increases in the cost of performance by the contractor.

DPW and says nothing by way of direction to the contractor. It cannot, therefore, meet the written order condition.

A letter from the district highway engineer dated February 3, 1988, comes much closer to constituting a written order or instruction. It acknowledges receipt of correspondence from BCC confirming a verbal order of a DPW superintendent to "stop certain excavation work in the median in the vicinity of Br R 3-10." The letter also contains an acknowledgement of BCC's "intent to submit a claim for any additional costs associated with this work." BCC had written to the district engineer on December 22, 1987, to "acknowledge" the directive of the DPW superintendent. BCC's letter had gone on to say it thought it could complete that work in about two weeks, but that, in consequence of the order not to proceed, the work would have to be done out of sequence, in more time, and at greater cost. Patched together, these documents have the earmarks of a written order to delay, i.e., a written confirmation of a delay order by an authorized official of the awarding authority.[6] We think that BCC is correct that a written confirmation of a field order or other directive to delay may satisfy the written order requirement of § 39O, if that written confirmation is addressed to the contractor by an authorized representative of the awarding authority. Cf. *Findlen* v. *Winchendon Hous. Authy.*, 28 Mass. App. Ct. 977, 978 (1990). Administration of public construction work would be greatly complicated if authorized field directives were not susceptible of written confirmation by authorized supervisory persons within a public agency. If a delay order could be made only by affirmative written instruction from the directorial board of the awarding authority (e.g., here the Public Works Commission), § 39O would be reduced to a paper tiger and the likelihood of work stoppage (while contractors awaited authorization) and consequent further delay would be increased. On the other hand, the written confirmation must be sufficiently precise as to the delay ordered so that the number of days involved in the delay can be calculated. The exchange between BCC and the DPW in this case is deficient as a § 39O order because it does not contain the basis for a reasonably accurate estimate of the days of delay ordered.

In two other respects, the December 22, 1987, and Febru-

[6]Under § 8.09 of the Blue Book, the engineer has authority to delay any portion of the work for such time "as he may deem necessary."

ary 3, 1988, letters fail as a written order under § 39O. *First,* the right to delay impact damages under § 39O is qualified by paragraph (*a*) of § 39O: "the awarding authority shall not make any adjustment in the contract price under this provision for any suspension, delay, interruption. . . to the extent that such is due to any cause for which this contract provides for an equitable adjustment of the contract price under any other contract provisions." The record does not contain the entire construction contract so we do not know whether there were other provisions for equitable adjustment of the contract price. We do know from the record that certain adjustments in favor of BCC were made. We also know that BCC received completion date extensions and obtained a waiver of the serious penalty of the "incentive/disincentive" provision. *Second,* there is no showing in the exchange of correspondence culminating in the DPW's letter of February 3, 1988, that the delay order was for the convenience of the DPW. Rather, as the delay was of excavation until spring, the order appears to have been weather related. Such delays were anticipated in the contract. Section 8.10 of the Blue Book provided: "The probable slowdown or curtailment of work during inclement weather and winter months has been taken into consideration in determining the total time required to complete the project, hence no extension of time will be allowed due to this reason." On the record before us, the postponement of excavation is not an order for which the contractor could claim delay.

As a final argument in its brief, BCC urges adoption of a principle of "constructive suspension," whereby a delay order is inferred from action of the public authority that causes delay in the public work. See *Merritt-Chapman & Scott Corp.* v. *United States,* 429 F.2d 431, 443 (Cl. Ct. 1970). Such a principal is inconsistent with the written order requirement of *Reynolds Bros., Inc.* v. *Commonwealth, supra* at 6.

The trial judge correctly ruled that, on this record, delay impact damages under G. L. c. 30, § 39O, were not recoverable.

*Judgment affirmed.*