Fremont-Smith, Thayer, J.
This case was tried jury-waived August 14-18, 2006. At the close of trial, the parties filed their requests for rulings and findings which, to the extent deemed relevant, are incorporated into this Memorandum of Decision.
The dispute arises out of the construction of an addition to defendants’ home in Newton, Massachusetts. A written contract, dated June 23, 1998, provided for a contract price of $399,016.90. Removal of ledge for the foundation was to be at the defendant owners’ expense. Any additional work was to be documented by change orders signed by all parties.
Disputes immediately arose between the parties. Creative Marine told Mr. Zaccai (“Zaccai”) that, to excavate the foundation, permission for access would have to be obtained from an abutter, and Zaccai agreed to procure this. He failed to do so before leaving on a European trip, however, and Creative Marine, assuming there was consent, proceeded to enter the abutter’s property and to cut trees and bushes. The abutter was incensed and thereafter refused permission for Cre *364 ative Marine to enter. This caused additional delay and expense, for which Zaccai paid Creative Marine.
Newton’s building inspector at first disapproved of the submitted building plans, drafted by Zaccai, and they had to be redrafted and a plot plan created by a surveyor, which also caused delay and expense, for which Zaccai also paid.
The suit arises out of the fact that, during the course of construction, Creative Marine concluded that various change orders for extra work were required. Zaccai Indicated his approval on the first four of these by signing them. Although he admits that he was presented with the additional change orders as work progressed, he testified that he refused to sign them, considering them to have been properly encompassed by the original contract price. He admits that he paid all but the final two, but testified he did so under duress, as Creative Marine threatened to otherwise cease work which it indeed did when the final two change orders were not paid. Creative Marine’s superintendent, on the other hand, testified that all of the change orders were verbally agreed to by Zaccai up until the final two (which were dated February 1,2000 and March 10,2000). As a result of Zaccai’s refusal to pay these two final change orders, Creative Marine left the job on March 13, 2000.
After plaintiff left the site, the addition to the house was completed by other contractors, and, within two months,, defendants were again occupying the home, all of Creative Marine’s work having been approved by the town Building Inspector.
Over the course of the work Zaccai was billed $486,712 and paid Creative Marine $461,230. Creative Marine seeks ajudgment for the difference, $25,481.87. Zaccai has counter-claimed for more than $200,000. He contends that, even though he paid Creative Marine over $461,000, the difference between what he paid and the original contract price of $399,016.90 (i.e., $62,213), was paid under protest and as a result of duress (plaintiffs threat to stop work unless paid). The remainder of Zaccai’s counter-claim is for work that defendants claim was required to remedy defects in Creative Marine’s original work (which remedial work Zaccai’s new contractor valued at $25,500), for plaintiff having overestimated in setting the contract price in the first place, and for the cost of completing unfinished work called for by the contract.

Plaintiff's Claim

As noted, Creative Marine has sued for $25,481.87 of work for which it has not been paid. It is true that neither of the defendants signed the change orders for this work, and Zaccai refused to pay for it.
Zaccai contends G.L.c. 142A, §2, which requires a home construction contract to be in writing signed by the parties, precludes plaintiffs recovery for any change orders which were not agreed to in writing.
It is, however, “a settled principle of law that ‘[t]he mode of performance required by a written contract may be varied by a subsequent oral agreement based upon a valid consideration.’ ” Cambridgeport Savings Bank v. Boersner, 413 Mass. 432, 439 (1992) (quoting Seigel v. Knott, 316 Mass. 526 (1944)). A provision in the original agreement, prohibiting subsequent changes to the contract unless reduced to a writing, will not bar oral modifications where it is clear both parties assent to the change, id.; see also Vitti v. Garabedian, 264 Mass. 1, 6-7 (1928) (where owner was present while architect made changes to a single housing development and knew that certain changes were necessary to its completion, owner was found to have consented to an oral and binding modification of the original contract and to have waived the original contract’s requirement for only written notifications); Schinkel v. Maxi-Holding, Inc., 30 Mass.App.Ct. 41, 47 (1991) (“later agreement[s] maybe proved through the conduct of the parties”). The same rule applies to the anti-waiver clause in the contract. Williston on Contracts, §39:36 and cases there cited.
The requirements of G.L.c. 142A, §2, moreover, have been held to be applicable to only the original contract, rather than to subsequent amendments, and do not abrogate the long-standing principle that parties are free to waive or alter provisions of their existing contract at anytime. See J.P. Smith Co. v. Wexler Construction Co., 353 Mass. 551, 554-55 (1968); Worcester Air Conditioning Co. v. Commercial Union Ins. Co., 14 Mass.App.Ct. 352, 357 (1982) (and cases cited).
Here, as in Vitti, supra, no credible evidence was presented by defendants that they ever instructed plaintiff not to perform the work. Defendants could not have been unaware that the additional work was being done, which enhanced the value of their home. No credible evidence was presented to indicate this work was not as plaintiff testified, additional to the work contemplated by the original contract price.
Accordingly, the Court finds that Zaccai, by his conduct, waived the provisions of the original contract and finds for the plaintiff in the sum of $25,481.87.

The Counterclaim

Defendants assert that much of the work reflected in the change orders, even with respect to work done pursuant to change orders that Zaccai signed and with respect to work he paid for, was done without their authorization.
As to the signed change orders, Zaccai testified that he signed them, while at the same time advising Creative Marine’s superintendent that he was not agreeing to pay more than the original contract price. This is refuted, however, by the veiy language of the change orders he signed, which expressly set forth, in each instance, a new total contract price as revised upwards by each change order.[1]
As for the change orders that Zaccai paid for but did not sign (which total $82,412) his counsel argues that a construction contract which provides for modification only by written agreement, as the contract here provided, cannot be modified by subsequent oral *365 agreement, citing G.L.c. 142A, §2, so that he should be reimbursed. The Court has considered that legal argument and has rejected it (see pp. 3-4 above).
Although Zaccai asserts that the change orders he did not sign (totaling $82,412) were not proper charges, he paid for all but the final two change orders ($25,481.87), and did not object to the work being done. Accordingly, the Court finds that he waived any objection thereto. See Vitti, supra. The Court also rejects Zaccai’s contention that he paid these change orders under duress because Creative Marine threatened to otherwise quit work. The Court has found above that plaintiff was entitled to be paid for the change orders at issue when it threatened to quit the job. It is settled law that doing or threatening to do what a party has a legal right to do cannot form the basis of economic duress. See International Underwater Contractors, Inc. v. New England Tel and Tel Co., 8 Mass.App.Ct. 340, 346 (1979), citing Willett v. Herrick, 258 Mass. 585 (1977).
Nor does the Court credit the testimony of defendants’ witnesses to the effect that plaintiff over estimated the value of the work to be done with respect to the original contract price, or accept defendant’s argument that the real value of the contract work was as stated on the building permit application. Rather, the Court credits plaintiffs testimony that the value of work indicated on the building permit was understated in order to reduce the building permit fee, as is a common practice in the building industry.
Finally, Zaccai alleges that after Creative Marine left the site, he was required to pay another contractor to complete the contract work. However, no credible evidence was presented as to the cost to defendants to complete any work called for by the contract after plaintiff left the site,[2] except for the estimate of the contractor who corrected defects and imperfections in the original work and placed a value of such corrective work, at $25,500.

JUDGMENT

For the reasons stated above, judgment shall enter for the plaintiff in the sum of $25,481.67, and judgment shall enter for the defendant on the counterclaim in the sum of $25,500.

The final change order that Zaccai signed on April 7,1999 expressly revised the original contract price ($399,016.90) upwards to $483,438.10 (exhibit 4D).

Zaccai testified he ended up spending about $975,000 on the home and the garage, but except with the respect to the $25,500 of remedial work, no credible evidence was provided which would enable the Court to ascertain what portion, if any, of that sum was required to finish the original contract as opposed to additional work not contemplated by the contract.